## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| AMIDE BEVERAGE COMPANY, LLC, | |
| *Plaintiff,* | **C.A. No. 4:24-cv-1022** |
| v. | |
| AMAZON.COM, INC., WOOT.COM LLC, WALMART, INC., SAM'S WEST, INC., ALBERTSONS COMPANIES, INC., THE KROGER COMPANY, TARGET CORPORATION, GNC HOLDINGS, LLC, PEPSICO, INC., WALGREEN COMPANY, CVS HEALTH CORPORATION, 7-ELEVEN, INC., CIRCLE K STORES INC., COSTCO WHOLESALE CORPORATION, AND H-E-B, LP, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Amide Beverage Company, LLC ("Amide Beverage" or "Plaintiff"), for its Complaint against Defendants Amazon.com, Inc. ("Amazon"), Woot.com LLC ("Woot.com"), Walmart, Inc. ("Walmart"), Sam's West, Inc. ("Sam's Club"), Albertsons Companies, Inc. ("Albertsons"), The Kroger Company ("Kroger"), Target Corporation ("Target"), GNC Holdings, LLC ("GNC"), PepsiCo, Inc. ("PepsiCo"), Walgreen Company ("Walgreens"), CVS Health Corporation ("CVS"), 7-Eleven, Inc. ("7-Eleven"), Circle K Stores Inc. ("Circle K"), Costco Wholesale Corporation ("Costco"), and H-E-B, LP ("H-E-B") (all collectively, "Defendants"), alleges the following:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

2.     Plaintiff Amide Beverage is a limited liability company organized under the laws of State of Delaware with a principal place of business at 1220 E. Hill Street, Signal Hill, CA 90755.

3.     Upon information and belief, Defendant Amazon is a corporation organized under the laws of the State of Delaware with places of business at 15201 Heritage Parkway, Fort Worth, Texas 76177, and 4121 International Parkway, Carrollton, Texas 75007.  Upon information and belief, Defendant Amazon sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.

4.     Upon information and belief, Defendant Woot.com is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 4121 International Pkwy., Carrollton, TX 75007.  Upon information and belief, Defendant Woot.com is a wholly owned subsidiary of Defendant Amazon, and Defendant Woot.com sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Woot.com is registered to do business with the State of Texas and may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, TX 78701.

5.     Upon information and belief, Defendant Walmart is a corporation organized under the laws of the State of Delaware with places of business at 4145 Dowlen Rd., Beaumont, TX 77706, and 3820 State Highway 64 W, Tyler, TX 75704.  Upon information and belief, Walmart sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Walmart is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

6.     Upon information and belief, Defendant Sam's Club is a limited liability company organized under the laws of the State of Arkansas with a place of business at 1200 E Spring Creek Pkwy, Plano, TX 75074.  Upon information and belief, Defendant Sam's Club sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Sam's Club is registered to do business with the State of Texas and may be served with process through its registered agent 12406 Ashford Hollow, Sugarland, Texas 77478.

7.     Upon information and belief, Defendant Albertsons is a corporation organized under the laws of the State of Delaware with places of business at 100 E Taylor St, Sherman, TX 75092, and 4415 W 7th St, Texarkana, TX 75501.  Upon information and belief, Defendant Albertsons sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream

of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Albertsons is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

8.      Upon information and belief, Defendant Kroger is a corporation organized under the laws of the State of Ohio with places of business at 3965 Dowlen Rd, Beaumont, TX, 77706, 3845 Phelan Blvd, Beaumont, TX, 77707, and 1820 N Loy Lake Rd, Sherman, TX, 75090. Upon information and belief, Defendant Kroger sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Kroger is registered to do business with the State of Texas and may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, TX 78701.

9.      Upon information and belief, Defendant Target is a corporation organized under the laws of the State of Minnesota with places of business at 5850 Eastex Fwy, Beaumont, TX 77708, and 7003 S Broadway Ave, Tyler, TX 75703.  Upon information and belief, Defendant Target sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Target is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

10.     Upon information and belief, Defendant GNC is a limited liability company organized under the laws of the State of Delaware with places of business at 6155 Eastex Freeway, Suite 122, Beaumont, TX, 77706, and 3903 N. Hwy 75, Ste 300, Sherman, TX, 75090. Upon information and belief, Defendant GNC sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant GNC is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

11.     Upon information and belief, Defendant PepsiCo is a corporation organized under the laws of the State of North Carolina with places of business at 8922 S Broadway Ave Suite 104, Tyler, TX 75703, and 5600 Headquarters Drive, Plano, Texas 75024.  Upon information and belief, Defendant PepsiCo sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant PepsiCo is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

12.     Upon information and belief, Defendant Walgreens is a corporation organized under the laws of the State of Illinois with places of business at 3605 College St, Beaumont, TX 77701, 1828 Texoma Pkwy, Sherman, TX 75090, and 5415 S Broadway Ave, Tyler, TX 75703. Upon information and belief, Defendant Walgreens sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced

infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Walgreens is registered to do business with the State of Texas.

13.    Upon information and belief, Defendant CVS is a corporation organized under the laws of the State of Rhode Island with places of business at 3890 Phelan Blvd, Beaumont, Texas, 77707, and 1702 S. Broadway Ave, Tyler, Texas 75702.  Upon information and belief, Defendant CVS sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant CVS is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

14.    Upon information and belief, Defendant 7-Eleven is a corporation organized under the laws of the State of Texas with places of business at 5590 Calder Ave, Beaumont, TX 77706 and 403 S Se Loop 323, Tyler, TX 75702.  Upon information and belief, Defendant 7-Eleven sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant 7-Eleven is registered to do business with the State of Texas and may be served with process through its registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, TX 77056.

15.    Upon information and belief, Defendant Circle K is a limited liability company organized under the laws of the State of Texas with places of business at 301 Legacy Dr, Plano,

TX 75023, 3905 Old Denton Rd, Carrollton, TX 75007, 826 Legacy Dr, Plano, TX 75023, 7040 W Spring Creek Pkwy, Plano, TX 75034, and 6529 Dallas Pkwy, Frisco, TX  75034.  Upon information and belief, Defendant Circle K sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Circle K is registered to do business with the State of Texas and may be served with process through its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, TX 78701.

16.     Upon information and belief, Defendant Costco is a limited liability company organized under the laws of the State of Washington with places of business at 1701 Dallas Pkwy, Plano, TX 75093-4580, 11220 Dallas Pkwy Frisco, TX 75033-4102, 3800 N Central Expy, Plano, TX 75074-2221, and 3650 W University Dr, McKinney, TX 75071-2934.  Upon information and belief, Defendant Costco sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States.  Defendant Costco is registered to do business with the State of Texas and may be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

17.     Upon information and belief, Defendant H-E-B is a limited liability company organized under the laws of the State of Texas with a place of business at 6001 Preston Rd Suite 100, Plano, TX 75093, and 4800 Main Street, Frisco, TX 75033, 8700 El Dorado Pkwy McKinney, TX 75070, 575 E. Exchange Pkwy Allen, TX 75002, and 899 University Dr, Frisco,

TX 75033.  Upon information and belief Defendant H-E-B sold, offered to sell, and/or used infringing products throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that such products would be sold and/or used in this judicial district and elsewhere in the United States. Defendant H-E-B is registered to do business with the State of Texas and may be served with process through its registered agent Abel Martinez at 646 South Flores Street, San Antonio, TX 78204.

## JURISDICTION AND VENUE

18.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

19.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

20.    Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

21.    This Court has personal jurisdiction over Defendant Amazon because Amazon has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Amazon conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) maintaining an active right to transact business in Texas with the Texas Secretary of State.

22.    Venue is proper in this district for Defendant Amazon because Amazon has committed acts of infringement in this judicial district and maintains a regular and established place of business in this district.  For instance, Amazon has admitted in prior litigation in this

district that it and/or "certain Amazon subsidiaries own and/or operate fulfilment centers located in Denton County at 15201 Heritage Parkway, Fort Worth, Texas 76177, and 4121 International Parkway, Carrollton, Texas 75007." *Dynapass IP Holdings v. Amazon.com, et al.*, No. 2:23-cv-00063, Dkt. 23 at ¶ 7 (E.D. Tex. Apr. 28, 2023).  On information and belief, 4121 International Parkway, Carrollton, Texas 75007 is also the address for co-Defendant Woot.com's corporate headquarters.  Amazon did not dispute that this Court had personal jurisdiction over Amazon in the *Dynapass IP Holdings v. Amazon.com, et al.* matter, nor did Amazon dispute that venue was proper in this District for that matter.  *Id.* at ¶¶ 4-5.  Amazon later moved to transfer the case out of this District for alleged convenience, but the Court denied that motion.  *Dynapass IP Holdings v. Amazon.com, et al.*, No. 2:23-cv-00063, Dkt. 152 (E.D. Tex. May 3, 2024).

23.     This Court has general personal jurisdiction over Defendant Woot.com because, on information and belief, Woot.com maintains its headquarters at 4121 International Parkway, Carrollton, Texas 75007, and Woot.com is therefore "at home" in this forum.  This Court also has specific personal jurisdiction over Woot.com because Woot.com has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Woot.com conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering to do business with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

24.     Venue is proper in this district for Defendant Woot.com because Woot.com has committed acts of infringement in this judicial district and maintains a regular and established place of business in this district at 4121 International Parkway, Carrollton, TX 75007.

25.     This Court has personal jurisdiction over Defendant Walmart because Walmart has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Walmart conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

26.     Venue is proper in this district for Defendant Walmart because Walmart has committed acts of infringement in this judicial district and maintains regular and established places of business in this district at 4145 Dowlen Rd., Beaumont, TX 77706, and 3820 State Highway 64 W, Tyler, TX 75704.  *See, e.g.*, https://www.walmart.com/store-directory/tx (last accessed Nov. 13, 2024).  Walmart has also recently admitted to venue being proper in this district.  *See Universal Cipher LLC v. Walmart, Inc*., No. 2:19-cv-00164, Dkt. 15 at ¶6 (E.D. Tex. Aug. 21, 2019) ("Walmart admits that it is subject to personal jurisdiction, that it transacts business in the State of Texas, and that Walmart has a regular and established place of business in the District").

27.     This Court has personal jurisdiction over Defendant Sam's Club because Sam's Club has sufficient minimum contacts with the State of Texas and this judicial district pursuant

to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Sam's Club conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

28.     Venue is proper in this district for Defendant Sam's Club because Sam's Club has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 1200 E Spring Creek Pkwy, Plano, TX 75074. *See, e.g.*, https://www.samsclub.com/locator (last accessed Nov 13, 2024).

29.     This Court has personal jurisdiction over Defendant Albertsons because Albertsons has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Albertsons conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

30.     Venue is proper in this district for Defendant Albertsons because Albertsons has committed acts of infringement in this judicial district and maintains regular and established

places of business in this district, including at 100 E. Taylor St., Sherman, TX 75092, 200 W

Crawford St, Denison, TX 75020 and 4415 W. 7th St., Texarkana, TX 75501.  *See*

https://local.albertsons.com/tx.html.  (last accessed Nov. 13, 2024).  Albertsons has not contested

venue in this district in recent actions.  *See, e.g.*, *Communication Interface Technologies, LLC v.*

*Albertsons LLC et al.*, No. 4:20-cv-00550, Dkt.  9 at ¶ 8 (E.D. Tex. Dec. 4, 2020); *Tiare*

*Technology, Inc. v. Dine Brands Global, Inc.*, No. 2:22-cv-00490, Dkt. 38 at ¶¶ 10-12 (E.D. Tex.

Mar. 14, 2023).

31.    This Court has personal jurisdiction over Defendant Kroger because Kroger has

sufficient minimum contacts with the State of Texas and this judicial district pursuant to

principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code

§ 17.042.  For example, Kroger conducts substantial business in Texas and in this judicial

district, directly or through intermediaries, including: (i) at least a portion of the infringements

alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of

conduct and/or deriving substantial revenue from goods and services provided to individuals in

the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an

active right to transact business in Texas with the Texas Secretary of State.

32.    Venue is also proper in this district for Defendant Kroger because Kroger has

committed acts of infringement in this judicial district and maintains regular and established

places of business in this district.  For instance, Defendant Kroger has stores in this judicial

district located at 3965 Dowlen Rd., Beaumont, TX 77706, 3845 Phelan Blvd., Beaumont, TX

77707, and 1820 N. Loy Lake Rd., Sherman, TX 75090.  *See, e.g.*,

https://www.kroger.com/stores/grocery/tx (last accessed Nov. 13, 2024).  Kroger has also not

contested venue in this district in recent actions.  *See, e.g.*, *Alpha Modus, Corp. v. The Kroger Co.*, No. 2:24-cv-00022, Dkt. 11 at ¶¶ 5-16 (E.D. Tex. Mar. 22, 2024).

33.    This Court has personal jurisdiction over Defendant Target because Target has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Target conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

34.    Venue is proper in this district for Defendant Target because Target has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 5850 Eastex Fwy., Beaumont, TX 77708, and 7003 S Broadway Ave., Tyler, TX 75703.  *See* https://www.target.com/store-locator/find-stores (last accessed Nov. 13, 2024).  Target has not contested venue in this district in recent actions. *See, e.g.*, *Flying Heliball, LLC v. Target Corporation,* No. 2:23-cv-00036, Dkt. 13 at ¶¶ 9-12 (E.D. Tex. Apr. 13, 2023); *Lexos Media IP, LLC v. Target Corporation*, No. 2:22-cv-00175, Dkt. 11 at ¶¶ 8-11 (E.D. Tex. Aug. 05, 2022).

35.    This Court has personal jurisdiction over Defendant GNC because GNC has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, GNC conducts substantial business in Texas and in this judicial district,

directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

36.    Venue is also proper in this district for Defendant GNC because GNC has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 6155 Eastex Freeway, Suite 122, Beaumont, TX 77706, and 3903 N. Hwy 75, Ste. 300, Sherman, TX 75090. *See, e.g.*, https://stores.gnc.com/all-stores-texas (last accessed Nov. 13, 2024).  GNC has not challenged venue in recent actions in this district and has admitted to owning and operating stores in this district. *See, e.g.*, *CXT Systems, Inc. v. General Nutrition Corporation*, No. 2:19-cv-00271, Dkt. 14 at ¶¶ 3, 5 (E.D. Tex. Oct. 02, 2019).

37.    This Court has personal jurisdiction over Defendant PepsiCo because PepsiCo has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, PepsiCo conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

38.     Venue is proper in this district for Defendant PepsiCo because PepsiCo has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 2750 W. Cardinal Dr., Beaumont, TX 77705, and 5600 Headquarters Dr., Plano, TX 75024.  Moreover, in prior litigation in this district, Defendant PepsiCo did not contest that venue was appropriate in this district.  *See, e.g.*, *Beverage Packaging Solutions, LLC v. PepsiCo, Inc., et al.*, No. 4:19-cv-00003-ALM, Dkt. 23 at ¶ 6 (E.D. Tex. Apr. 18, 2019).

39.     This Court has personal jurisdiction over Defendant Walgreens because Walgreens has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Walgreens conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

40.     Venue is proper in this district for Defendant Walgreens because Walgreens has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 3605 College St., Beaumont, TX 77701, 5415 S Broadway Ave, Tyler, TX 75703, and 1828 Texoma Pkwy., Sherman, TX 75090.  *See* https://www.walgreens.com/storelistings/storesbycity.jsp?requestType=locator&state=TX (last accessed Nov. 13, 2024).  In prior litigation in this district, Walgreens did not contest venue in

this district.  *See, e.g.*, *Optinetix Inc. v. Walgreen Co.*, No. 1:21-cv-00293, Dkt. 12 at ¶¶ 7-8

(E.D. Tex. Aug. 25, 2021).

41.    This Court has personal jurisdiction over Defendant CVS because CVS has

sufficient minimum contacts with the State of Texas and this judicial district pursuant to

principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code

§ 17.042.  For example, CVS conducts substantial business in Texas and in this judicial district,

directly or through intermediaries, including: (i) at least a portion of the infringements alleged

herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of

conduct and/or deriving substantial revenue from goods and services provided to individuals in

the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an

active right to transact business in Texas with the Texas Secretary of State.

42.    Venue is proper in this district for Defendant CVS because CVS has committed

acts of infringement in this judicial district and maintains regular and established places of

business in this district, including at 4000 W. Spring Creek Pkwy., Plano, TX 75024, 2101 W.

Spring Creek Pkwy., Plano, TX 75023, 3890 Phelan Blvd., Beaumont, TX 77707, and 1702 S.

Broadway Ave., Tyler, TX 75701.  *See* https://www.cvs.com/store-locator/cvs-pharmacy-

locations/Texas (last accessed Nov. 13, 2024).

43.    This Court has personal jurisdiction over Defendant 7-Eleven because 7-Eleven

has sufficient minimum contacts with the State of Texas and this judicial district pursuant to

principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code

§ 17.042.  For example, 7-Eleven conducts substantial business in Texas and in this judicial

district, directly or through intermediaries, including: (i) at least a portion of the infringements

alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of

conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

44.    Venue is proper in this district for Defendant 7-Eleven because 7-Eleven has committed acts of infringement in this judicial district and maintains regular and established places of business in this district.  For instance, Defendant 7-Eleven has previously admitted that it owns, operates, manages, and conducts business from facilities at several locations in the Eastern District of Texas, such as 3401 S. Broadway Ave., Tyler, TX 75701, 5015 S. Broadway Ave., Tyler, TX 75703, 1315 S. Beckham Ave., Tyler, TX 75701, 11421 State Hwy. 64, Tyler, TX 75704, 12540 State Hwy. 155, Tyler, TX 75703, 303 South Main Street, Lindale, TX 75771, 7810 S. State Hwy. 78, Sachse, TX 75048, and 1203 N. Pacific St., Mineola, TX 75773.  *See Ministrap, LLC v. 7-Eleven Inc.*, No. 2:21-cv-000406, Dkt. 11 at ¶¶ 6-7, 10 (E.D. Tex. Jan. 13, 2022) (Defendant 7-Eleven not contesting venue or personal jurisdiction in this district in that matter, and admitting to owning, operating, managing, and conducting business from the above-listed locations in the Eastern District of Texas).

45.    This Court has personal jurisdiction over Defendant Circle K because Circle K has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, Circle K conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in

the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an

active right to transact business in Texas with the Texas Secretary of State.

46.    Venue is proper in this district for Defendant Circle K because Circle K has

committed acts of infringement in this judicial district and maintains regular and established

places of business in this district, including at 301 Legacy Dr, Plano, TX 75023, 3905 Old

Denton Rd., Carrollton, TX 75007, 826 Legacy Dr, Plano, TX 75023, 7040 W Spring Creek

Pkwy, Plano, TX 75034, and 6529 Dallas Pkwy, Frisco, TX  75034.  *See*

https://www.circlek.com/list-united-states-stores (last accessed Nov. 13, 2024).  Circle K also

admitted that venue in this district was proper in a past action.  *See, e.g.*, *EMSAT Advanced Geo-*

*Location Technology, LLC et al v. Virgin Mobile USA, L.P. et al*, No. 2:09-cv-00091, Dkt. 38 at

¶ 13 (E.D. Tex. May 27, 2009).

47.    This Court has personal jurisdiction over Defendant Costco because Costco has

sufficient minimum contacts with the State of Texas and this judicial district pursuant to

principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code

§ 17.042.  For example, Costco conducts substantial business in Texas and in this judicial

district, directly or through intermediaries, including: (i) at least a portion of the infringements

alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of

conduct and/or deriving substantial revenue from goods and services provided to individuals in

the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an

active right to transact business in Texas with the Texas Secretary of State.

48.    Venue is proper in this district for Defendant Costco because Costco has

committed acts of infringement in this judicial district and maintains regular and established

places of business in this district, including at 1701 Dallas Pkwy, Plano, TX 75093-4580, 11220

Dallas Pkwy Frisco, TX 75033-4102, 3800 N Central Expy, Plano, TX 75074-2221, and 3650 W University Dr, McKinney, TX 75071-2934.  *See* https://www.costco.com/warehouse-locations?langId=-1&storeId=10301&catalogId=10701 (last accessed Nov. 13, 2024).

49.    This Court has personal jurisdiction over Defendant H-E-B because H-E-B has sufficient minimum contacts with the State of Texas and this judicial district pursuant to principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  For example, H-E-B conducts substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas; and (iii) registering with the Texas Secretary of State and maintaining an active right to transact business in Texas with the Texas Secretary of State.

50.    Venue is proper in this district for Defendant H-E-B because H-E-B has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including at 6001 Preston Rd Suite 100, Plano, TX 75093, 4800 Main Street, Frisco, TX 75033, 8700 El Dorado Pkwy McKinney, TX 75070, 575 E. Exchange Pkwy Allen, TX 75002, and 899 University Dr, Frisco, TX 75033. *See* https://www.heb.com/store-locations?address=plano&page=1 (last accessed Nov. 13, 2024).

## JOINDER PURSUANT TO 35 U.S.C. § 299

51.    This matter is a civil action for patent infringement under 35 U.S.C. § 271 and therefore arises under an "Act of Congress relating to patents" pursuant to 35 U.S.C. § 299.

52.    Each Defendant is accused of infringing the same claims of the same asserted patent, U.S. Patent No. 8,350,077 ("the '077 patent").  A true and correct copy of the '077 patent is attached as Exhibit A.

53.    Each Defendant is accused of infringing the '077 patent at least by using, selling, or offering to sell the same Bang® or Bang® energy drink products that contained "Creatyl-L-Leucine" and at least one low-molecular-weight organic or mineral acid (the "Accused Instrumentalities") and that were provided directly or indirectly to each Defendant prior to October 10, 2022.[1]  Exhibit B sets forth exemplary evidence of each Defendant's use, sale, or offer for sale one or more Accused Instrumentalities that were directly or indirectly provided to that Defendant prior to October 10, 2022.

54.    The Accused Instrumentalities all originated from the same source, Vital Pharmaceuticals, Inc. ("Vital").

55.    Vital was liquidated during Chapter 11 bankruptcy proceedings in late 2023 and no longer exists as a going concern.

56.    Amide Beverage asserts its right to relief against Defendants jointly, severally, or in the alternative, and Amide Beverage's claims for relief arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the using, offering for sale, or selling of the same Accused Instrumentalities.

57.    As a non-limiting example, in April 2020 Vital entered into an exclusive distribution agreement with PepsiCo ("PepsiCo Distribution Agreement") to distribute Bang®

---

[1] "Creatyl-L-Leucine" can be alternatively referred to as "Creatinyl-L Leucine."  Because the labels of the Accused Instrumentalities use the name "Creatyl-L-Leucine," Amide Beverage employs that nomenclature throughout its Complaint and exhibits to avoid confusion.  Amide Beverage, however, specifically reserves the right to use the alternative chemical name "Creatinyl-L-Leucine" throughout this litigation.

and Bang® energy drink products, among other products, nationwide.  (*See* Ex. C, *In re Vital Pharmaceuticals, Inc., et al.*, No. 22-17842-PDR, Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings, Dkt. 26 at ¶ 18 (Bankr. S.D. Fla. Oct. 10, 2022).)  Therefore, at least (i) Amide Beverage's claims for relief regarding PepsiCo's distributing the Accused Instrumentalities, on the one hand, and (ii) Amide Beverage's claims for relief regarding retail sales or offers for sale of Accused Instrumentalities by non-PepsiCo Defendants that obtained those Accused Instrumentalities from PepsiCo, on the other hand, were part of the same series of transactions or occurrences.

58.    As another non-limiting example, because all Defendants obtained the Accused Instrumentalities directly or indirectly from Vital, each accused use, sale, or offer for sale of the Accused Instrumentalities formed part of the same series of transactions originating with Vital and culminating with the infringing actions of each Defendant.

59.    Questions of fact common to all Defendants will arise in this action, including common questions of fact pertaining to at least: (i) the construction of the asserted claims of the '077 patent, (ii) infringement of the '077 patent by the Accused Instrumentalities, (iii) Defendants' joint, several, or alternative liability for infringing the '077 patent, and (iv) damages for Defendants' infringement of the '077 patent.

60.    Joining the accused infringers and deciding such common questions of fact in a single action is likely to promote judicial efficiency and economy.

61.    Joinder of the Defendants is therefore warranted and proper pursuant to 35 U.S.C. § 299.

## BACKGROUND

### The Claimed Inventions of the Asserted '077 Patent

62.     On January 8, 2013, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,350,077 ("the '077 patent"), titled "Amides of Creatine, Method of Their Preparation, and Remedy Possessing a Neuroprotective Activity," to inventors Sergej Vladimirovich Burov, Natalia Vasilyevna Khromova, Anna Alexandrovna Khromova, and Petr Alekseevich Khromov.  (*See* Ex. A.)

63.     Amide Beverage is the assignee of the '077 patent, and holds all rights, title, and interest in the '077 patent, including the right to assert all causes of action arising under said patent and the right to obtain any remedies for infringement of said patent.

64.     The '077 patent claims novel derivatives of creatine.

65.     Creatine is a well-known amino acid derivative that plays a key role in energy metabolism, existing naturally in various tissues in the body, either as a free-state molecule or as creatine phosphate.  Creatine can also be consumed in low quantities as part of a person's diet.

66.     In the 1990s and early 2000s, numerous studies demonstrated that ingesting higher doses of creatine than one could reasonably consume through food could lead to enhanced athletic performance and a variety of health benefits.  Synthetic creatine supplements, typically containing creatine monohydrate, were thus developed to enable such higher dosing.

67.     Synthetic creatine supplements, however, exhibited significant drawbacks.  For example, despite typically being administered orally via water or mixed into water-based solutions, such compounds were often poorly soluble in aqueous (water-based) media and tended to have poor stability at physiological pH values.  As a result, these supplements were often unpleasant to use, not fully absorbed, and could cause gastrointestinal issues.

68.    Potential substitute creatine compounds synthesized to address the above-referenced drawbacks continued to exhibit insufficient stability in aqueous solutions. Developing creatine derivative compounds that overcame this problem thus remained a significant challenge in the field.

69.    The inventors of the '077 patent succeeded in developing novel creatine derivatives with substantially improved stability in an aqueous solution.  Specifically, the inventors developed compounds comprising amides of creatine, together with either water or a low-molecular-weight organic or mineral acid, and compositions comprising these compounds. The inventors of the '077 patent secured patents on these inventions, including the '077 patent in the United States and patent number RU 2354645 C1 in Russia (the "'077 Russian Counterpart Patent").

70.    Claim 1 of the '077 patent recites the general chemical formula of the claimed compounds:

> 1. Amides of Creatine having a general formula: NH=C(NH2)-N(CH3)-CH2-CO-NH-R*X, wherein R is amino acid residue of aliphatic L-amino acid, or aromatic amino L-acid or heteroaromatic L-amino acid or derivatives of aliphatic L-amino acid, or aromatic L-amino acid or heteroaromatic L-amino acid representing at least one of the following: salts of amino acid, amino acid esters, amino acid amides, or amino acid peptides; and X is low-molecular-weight organic or mineral acid or water.

(Ex. A, '077 patent at 16:36-44.)

71.    The claimed inventions resolved a longstanding problem in the art, and thus represent a significant advancement over the prior art.

**The Accused Bang® and Bang® Energy Drink Products**

72.    By 2018, the Accused Instrumentalities, Vital's flagship Bang® and Bang® energy drink products, had become the fastest-growing beverage in the U.S. non-alcoholic beverage

sector, and by April of 2022, Bang® was the third best-selling energy drink in the United States. (Ex. C, *In re Vital Pharmaceuticals, Inc., et al.*, No. 22-17842-PDR, Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings, Dkt. 26 at ¶ 8 (Bankr. S.D. Fla. Oct. 10, 2022).)

73.     On each can of Bang® and Bang® energy drink products, Vital emphasized an ingredient of Bang® it called "Super Creatine," as shown in the following exemplary images archived from Vital's bangenergy.com website:





(Ex. D, http://web.archive.org/web/20201021235528/https://bangenergy.com/ (last accessed

Nov. 13, 2024) (all three above images are from this source).)

74.    The name "Super Creatine," which according to Vital described a compound with

a chemical name given as "Creatyl-L-Leucine," also appeared in all capital letters and/or with

boldface type on Bang® and Bang® energy drink product nutrition labels, as illustrated in the

following exemplary label archived from Vital's bangenergy.com website:



(Ex. E, http://web.archive.org/web/20210121111046/https://bangenergy.com/shop/bang-variety-12-pack/ (last accessed Nov. 13, 2024) (annotations added).)

75.    Vital also emphasized in the nutrition labels for the Accused Instrumentalities that Creatyl-L-Leucine was "Creatine bonded to L-Leucine" and that this amide derivative of creatine was stable in aqueous solution, as shown in the exemplary image below:



(Ex. E, http://web.archive.org/web/20210121111046/https://bangenergy.com/shop/bang-variety-12-pack/ (last accessed Nov. 13, 2024) (annotations added).)

76.     On social media and in advertisements Vital and its CEO touted "Super Creatine's" aqueous solubility and stability as being exclusively available in Bang® and Bang® energy drink products:

> HOW MY PATENTED SUPER CREATINE WORKS! Super Creatine is special in many ways. ***First of all, it's the world's only stable creatine-amino acid peptide contained in @BangEnergy. Secondly, unlike leucine and unlike creatine, both of which are***

> *not soluble in water, Super Creatine is the most soluble creatine peptide known to man.*

(Ex. F, *Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*, 5:18-cv-01882-JGB-SHK, Dkt. 740 at 17 (C.D. Cal., April 19, 2022) (quoting an Instagram post—now no longer available—from John Owoc, then-CEO of Vital) (emphasis added).)

> The reason is that creatine is not stable in a water-based drink because it converts to a useless substance known as creatinine. **Super Creatine® is the only water-stable Super Creatine peptide contained exclusively in Bang® Energy Products**.

(Ex. G, https://markets.businessinsider.com/news/stocks/bang-shocks-beverage-world-with-triple-threat-tea-se-launch-1023013012 (last visited on November 13, 2024) (emphasis added).)

77.     As shown above, Vital also marked its Bang® and Bang® energy drink products—including the Accused Instrumentalities that Defendants sold, offered for sale, or used—with "U.S. Patent No. 8,445,466."

78.     U.S. Patent No. 8,445,466 ("the Owoc patent," attached hereto as Exhibit H) was filed on April 8, 2010, and named former Vital CEO John H. Owoc and Liangxi Li as inventors.

79.     As set forth in Paragraphs 87-91 below, all 12 original claims of the Owoc patent were canceled after being reexamined and found invalid in view of the '077 Russian Counterpart Patent.

**Prior District Court Litigations Involving the '077 Patent and Accused Instrumentalities**

80.     The prior exclusive licensee (and later owner) of the '077 patent, ThermoLife International, LLC ("ThermoLife") sued Vital for infringing the '077 patent by making, distributing, selling, or offering to sell Bang® and Bang® energy drink products without authorization.  In a subsequent suit, ThermoLife sued Vital and three groups of Bang® and Bang® energy drink retailers for infringing the '077 patent by making, distributing, selling, or

offering to sell Bang® and Bang® energy drink products without a license.  Both actions were dismissed *sua sponte* and without prejudice by court order by the respective courts before either court reached the merits of the parties' claims or defenses.

81.    The first action, *ThermoLife International, LLC v. Vital Pharmaceuticals, Inc.*, No. 2:14-cv-02499, was filed in the United States District Court of the Central District of California on April 1, 2014.  That matter was transferred to the Southern District of Florida on August 12, 2014 (*ThermoLife International, LLC v. Vital Pharmaceuticals, Inc.*, No. 14-cv-61864, Dkt. 39 (S.D. Fla., Aug. 12, 2014)), and was dismissed by the court *sua sponte* and without prejudice on October 23, 2015, after the parties failed to file their joint pretrial stipulation by noon of that day (they mistakenly filed later that evening) (*id.* at Dkt. 86).

82.    The second action, which ThermoLife initiated in the Southern District of Florida with co-plaintiff Werteks Closed Joint Stock Company ("Werteks"),[2] was *Werteks Closed Joint Stock Company, et al. v. GNC Corporation, et al.*, No. 16-cv-60688 (S.D. Fla., filed Mar. 31, 2016) ("Second SDFL Suit").  This Second SDFL Suit, which involved current Defendant GNC, was also dismissed by the court *sua sponte* and without prejudice on January 11, 2019, after the plaintiffs' joint counsel withdrew on December 20, 2018 and neither plaintiff retained new counsel by January 9, 2019.  *Werteks Closed Joint Stock Company, et al. v. GNC Corporation, et al.*, No. 16-cv-60688, Dkt. No 60 (S.D. Fla. Jan. 11, 2019).

83.    Prior to dismissal in both earlier actions, ThermoLife lodged detailed infringement allegations.  Thus, even though these prior actions were dismissed without

---

[2] Werteks, a Russian company, also does business as "Werteks Pharmaceutical Company" and was previously known as "Vertex Closed Joint Stock Company."  ThermoLife acquired the '077 patent from Werteks via an assignment agreement.

prejudice, at least Defendant GNC has known of its infringement of the '077 patent for many years.

**Reexamination of the '077 Patent**

84.    While ThermoLife's Second SDFL Suit against Vital was pending, ThermoLife learned of thirteen prior art references that the defendants in that action alleged rendered the '077 patent invalid.  ThermoLife voluntarily presented those prior art references to the United States Patent and Trademark Office ("USPTO") and requested that the USPTO reexamine the validity of the '077 patent's claims in view of those references.

85.    The USPTO granted ThermoLife's request, conducted the reexamination, and determined that claims 1 and 3 of the '077 patent were patentable over the references presented. The USPTO also determined that claim 2 was patentable as amended (the claim term "solvent" was corrected to the plural "solvents"), and that newly proposed claims 4-7 were patentable.

86.    On January 12, 2018, the USPTO issued an *Ex Parte* Reexamination Certificate memorializing these patentability determinations.  A true and correct copy of the reexamination certificate for the '077 patent appears on the last two pages of Exhibit A.

**Invalidation of the Owoc Patent in View of the '077 Russian Counterpart Patent**

87.    ThermoLife also requested that the USPTO reexamine the patentability of all twelve original claims of the Owoc patent (that Vital marked on each Accused Instrumentality) in view of the disclosures of the '077 patent.  The USPTO granted ThermoLife's request and ultimately determined that claims 1 and 5-12 of the Owoc patent were invalid as obvious over the '077 Russian Counterpart Patent in view of other prior art references.  (*See* Ex. I, USPTO Reexam. Control No. 90/013,933, Mar. 5, 2019, Decision on Appeal.)

88.    The Owoc patent assignee also cancelled claims 2-4 earlier during the reexamination proceedings.  (*See* Ex. J, USPTO Reexam. Control No. 90/013,933, May 1, 2018, Response to Final Office Action.)

89.    The Owoc patentee appealed the USPTO's decision to the United States Court of Appeals for the Federal Circuit, but then dismissed the appeal voluntarily before that court rendered a decision on the merits.  *See In re: Energy Beverages LLC*, Appeal No. 2019-2330, Dkt. 72 (Fed. Cir. Nov. 16, 2023).

90.    The USPTO subsequently canceled remaining original claims 1 and 5-12 of the Owoc patent.  (*See* Ex. K, USPTO Reexam. Control No. 90/013,933, Mar. 13, 2024, Notice of Intent to Issue *Ex Parte* Reexamination Certificate at 2.)

91.    All twelve original claims of the Owoc patent were thus canceled following reexamination of that patent in view of the '077 Russian Counterpart Patent.

**<u>Vital's Bankruptcy and Related Proceedings</u>**

92.    On October 10, 2022 (the "Petition Date"), Vital declared bankruptcy and filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Proceeding").

93.    Vital continued selling infringing Bang® and Bang® energy drink products while the Chapter 11 Proceeding was pending, and ThermoLife initiated an adversary proceeding within the bankruptcy to recover damages for Vital's post-Petition Date infringement of the '077 patent.  *ThermoLife International, LLC v. Vital Pharmaceuticals, Inc. d/b/a Bang Energy d/b/a VPX*, Case No. 22-17842-PDR, Adv. Proc. No. 23-01134-PDR, Dkt. 1 (Bankr. S.D. Fla. July 5, 2023).

94.    ThermoLife also submitted a formal application in the Chapter 11 Proceeding to recover damages for such post-Petition Date infringement as an administrative expense claim. *See* Case No. 22-17842-PDR, Dkt. 1964.

95.    After filing extensive briefing, exhibits, and testimonial proffers from four separate expert witnesses in support of their claims and defenses, and after engaging in court-mandated mediation, the parties reached a mutually agreeable resolution of their dispute regarding Vital's post-Petition Date infringement.  (*See* Ex. L, Case No. 22-17842-PDR, Dkt. 2142.)

96.    The parties' mutual resolution (i) was supported by the Official Committee of Unsecured Creditors, a consortium of third-party creditors (including current Defendant PepsiCo[3]) that represented the interests of all creditors in the Chapter 11 Proceeding, and (ii) was approved by the court and entered as part of the court's order approving ThermoLife's application for an administrative expense claim in the Chapter 11 Proceeding.  (*See* Ex. L, Case No. 22-17842-PDR, Dkt. 2142.)

97.    The court's order stated that "the payment(s) set forth herein do not reflect a reasonable royalty, but instead reflect a lesser amount required by circumstances of the ongoing bankruptcy proceeding," and that the parties had agreed "that a reasonable royalty for U.S. Patent No. 8,350,077 would be 8 to 10 percent of sales of consumer products that include infringing compounds or were made pursuant to an infringing manufacturing process."  (*See* Ex. L, Case No. 22-17842-PDR, Dkt. 2142 at ¶ 10.)

98.    On information and belief, the "circumstances of the ongoing bankruptcy proceeding" that required awarding ThermoLife "a lesser amount" than the agreed reasonable

---

[3] *See* Case No. 22-17842-PDR, Dkt. 400 at 3.

royalty rate included at least: (i) Vital's insolvency, which affected the amount available to pay, (ii) Vital's substantially lower sales of Bang® and Bang® energy drink products after the Petition Date relative to its sales of the same products in the several years prior to the Petition Date, and (iii) that any administrative expense payment to ThermoLife would diminish the funds available to pay other creditors in the Chapter 11 Proceeding, which was critical to getting a bankruptcy plan approved.

99.     Vital's post-Petition Date infringement of the '077 patent spanned from only the October 10, 2022 Petition Date until the entire line of Bang® and Bang® energy drink products assets was sold to a third party on or about July 31, 2023.  *See* Case No. 22-17842-PDR, Dkt. 1964 at ¶ 10.

100.     Vital was subsequently liquidated pursuant to Debtors' Second Amended Joint Plan of Liquidation in the Chapter 11 Proceeding, and Vital no longer exists as a going concern. *See* Case No. 22-17842-PDR, Dkt. 1905, 2258.

101.     In its order approving the administrative expense claim to ThermoLife, the bankruptcy court explicitly stated that "nothing in this Order, [Vital's Reorganization] Plan, or the Confirmation Order [regarding Vital's Reorganization Plan] shall impair or reduce any of ThermoLife's rights or claims against any third party on any ground arising at any time," aside from limited "exculpations" pertaining to the administration of the Chapter 11 Proceeding that are not relevant to this action.  (*See* Ex. L, Case No. 22-17842-PDR, Dkt. 2142 at ¶ 6.)

**Amide Beverage Acquires the '077 Patent from ThermoLife**

102.     On November 4, 2024, Amide Beverage purchased and acquired the '077 patent from ThermoLife, and Amide Beverage became the '077 patent's sole owner, holding all rights,

title, and interest in the '077 patent, including all rights to recover past damages for infringement of the '077 patent.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,350,077

103.    The allegations set forth in the foregoing paragraphs 1 through 102 are hereby incorporated into this First Claim for Relief.

104.    Upon information and belief, each Defendant directly infringed at least claims 1 and 5 of the '077 patent by using, selling, or offering to sell without authority Bang® and Bang® energy drink products that were provided directly or indirectly to each Defendant prior to October 10, 2022 and that contained "Creatyl-L-Leucine" and at least one low-molecular-weight organic or mineral acid.

105.    Upon information and belief, the Accused Instrumentalities infringed claim 1 of the '077 patent.  Claim 1 of the '077 patent recites:

> 1. Amides of Creatine having a general formula: **NH=C(NH2)-N(CH3)-CH2-CO-NH-R*X, wherein R is amino acid residue of aliphatic L-amino acid**, or aromatic amino L-acid or heteroaromatic L-amino acid or derivatives of aliphatic L-amino acid, or aromatic L-amino acid or heteroaromatic L-amino acid representing at least one of the following: salts of amino acid, amino acid esters, amino acid amides, or amino acid peptides; **and X is low-molecular-weight organic or mineral acid** or water.

(Ex. A, 16:36-44 (emphasis added).)  Claim 1 covers a family of compounds, but the exemplary infringement analysis set forth below focuses on the subcategory of claimed compounds comprising creatine amides with the above chemical formula wherein R is an amino acid residue of aliphatic L amino acid (specifically an L-leucine residue) and wherein X is a low-molecular-weight organic acid (e.g., citric acid, malic acid, ascorbic acid, and/or derivatives or salt forms of these compounds) or a low-molecular-weight mineral acid (e.g., phosphoric acid, and/or

derivatives or salt forms of this compound). Amide Beverage specifically reserves the right to expand upon this exemplary analysis and to assert additional infringement theories in accordance with the Local Rules, the Court's Scheduling Order, or as otherwise permitted.

106. The following annotated drawing of Creatinyl-L-Leucine's / Creatyl-L-Leucine's ("CLL") chemical structure demonstrates how the constituent atoms of CLL track the NH=C(NH2)-N(CH3)-CH2-CO-NH-R portion of the claimed compound:



107. The Owoc patent, which is marked on each of the Accused Instrumentalities as covering CLL, discloses the same chemical structure for CLL:

> In another specific embodiment, the creatyl-amide molecule is creatyl-L-leucine:



(II) Creatyl-L-Leucine; (2s)-2-(2-(carbamimidoyl-methyl-amino)acetamido)-4-methylpetanoic acid

(Ex. H, Owoc patent at 5:22-34 (annotations added).)

108.    The Accused Instrumentalities contain CLL as an ingredient, as demonstrated in the following annotated exemplary image of a Bang® nutrition label archived from Vital's bangenergy.com website prior to October 10, 2022:



(Ex. B-1, https://web.archive.org/web/20210120182724/https://bangenergy.com/shop/bang-12-pack/ (last accessed Nov. 13, 2024) (annotations added).)

109.    In a prior litigation initiated before October 10, 2022, Vital itself asserted that, "[i]t is undisputed that BANG contains CLL: [Plaintiff] itself tested BANG and found it contained CLL." *Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*, C.A. No. 5:18-cv-01882-JGB-SHK, ECF No. 438-1 at 15 (C.D. Cal. June 24, 2021) (citations omitted).

110.    The Accused Instrumentalities therefore include CLL, an amide of creatine having a general formula NH=C(NH2)-N(CH3)-CH2-CO-NH-R, wherein R is amino acid residue of aliphatic L-amino acid.

111.    Claim 1 of the '077 patent also recites an X component that is non-covalently bonded to CLL (denoted here by the * symbol): "Amides of Creatine having a general formula: NH=C(NH2)-N(CH3)-CH2-CO-NH-R *X, wherein R is amino acid residue of aliphatic L-amino acid, . . . *and X is low-molecular-weight organic or mineral acid . . . .*" (emphasis added).

112.    The Accused Instrumentalities contain at least one low-molecular-weight organic or mineral acid as an ingredient, as demonstrated by at least the presence of the low-molecular-weight organic acid citric acid in the following annotated exemplary image of a Bang® nutrition label archived from Vital's bangenergy.com website prior to October 10, 2022:



(Ex. B-1, https://web.archive.org/web/20210120182724/https://bangenergy.com/shop/bang-12-pack/ (last accessed Nov. 13, 2024) (annotations added).)

113.    Fundamental chemical principles teach that, in aqueous solution, as in the Accused Instrumentalities, the CLL and X components of the claimed compound initially dissociate to some extent. CLL adopts a net positive charge, and the X component, such as a low-molecular-weight organic or mineral acid (e.g., citric acid), adopts a net negative charge. The two are thus oppositely charged and interact non-covalently to form a salt equilibrium product, as illustrated in the following exemplary drawing of CLL*citrate:



114.    The molecule above has the formula NH=C(NH2)-N(CH3)-CH2-CO-NH-R*X, where R (red) is an L-leucine residue covalently bonded to creatine (blue), forming the creatine amide CLL (blue + red), and X (green) is the low molecular weight organic acid (citrate) non-covalently bound to CLL.

115.    On information and belief, one or more infringing CLL*X equilibrium products similar to the above formed in each Accused Instrumentality, whether the equilibrium product was CLL*citrate or another CLL*X salt form wherein X was a different low-molecular-weight organic acid or mineral acid (e.g., malic acid, ascorbic acid, phosphoric acid, and/or derivatives or salt forms of these compounds).

116.    The Accused Instrumentalities thus literally infringed claim 1 of the '077 patent.

117.    As set forth in Exhibit B, each Defendant used, sold, or offered for sale one or more Accused Instrumentalities that were directly or indirectly provided to that Defendant prior to October 10, 2022.

118.    Therefore, each Defendant literally infringed claim 1 of the '077 patent.

119.    In ThermoLife's adversary proceeding against Vital, Vital initially denied that a CLL*citrate equilibrium product formed in the Accused Instrumentalities.  *Compare, e.g., ThermoLife International, LLC v. Vital Pharmaceuticals, Inc. d/b/a Bang Energy d/b/a VPX*, Case No. 22-17842-PDR, Adv. Proc. No. 23-01134-PDR, ThermoLife Complaint, Dkt. 1 at ¶ 51

(alleging that "in the Accused Instrumentalities" CLL and citric acid "interact ionically to form a citrate salt as an equilibrium product"), *with* Vital's Answer, Dkt. 20 at ¶ 51 (denying the same). Denying that the ionic components of a salt form would pair to form an equilibrium product in aqueous solution wrongly contradicts well-validated chemical principles.

120. Specifically, on information and belief, the general phenomenon of ion-pairing in solution (of which the formation of a CLL*citrate equilibrium product is a specific example) has been validated multiple times over at least the last 18 years using a variety of experimental techniques, including (i) dielectric relaxation spectroscopy, (ii) far-infrared (terahertz) absorption spectroscopy, (iii) femtosecond midinfrared spectroscopy, (iv) X-ray spectroscopy and scattering, and (v) molecular dynamics simulation.

121. To the extent any Defendant attempts to argue in this matter that a CLL*citrate equilibrium product (or other infringing CLL*X equilibrium product) did not form in the Accused Instrumentalities, the Accused Instrumentalities additionally or alternatively infringed claim 1 under the doctrine of equivalents.

122. For example, the claimed CLL*X compounds in aqueous solution are, in light of the teachings of the '077 patent, insubstantially different from dissociated $CLL^+$ and $X^-$ components of the claimed compounds in aqueous solution.

123. Claim 1 does not restrict the claimed compounds to being in a particular phase of matter (e.g., liquid, solid, or gas).

124. There was no disclaimer of the claimed compounds in solution during prosecution of claim 1 of the '077 patent.

125.    Based on fundamental chemical principles, the $CLL^+$ and $X^-$ components of the claimed CLL*X compounds (wherein X is a low-molecular-weight organic or mineral acid) naturally dissociate to some extent in aqueous solution.

126.    Based on fundamental chemical principles, salt forms, like CLL*X, can be synthesized by mixing a neutral form of each component (e.g., CLL free base and citric acid) in an aqueous solution to create the $CLL^+$ and $X^-$ ions, and then removing the aqueous solution.

127.    Thus, as an example, in light of the teachings of the '077 patent, CLL*citrate in the aqueous solution of the Accused Instrumentalities was insubstantially different from $CLL^+$ and $citrate^-$ in the aqueous solution of the Accused Instrumentalities.

128.    As a further example, the CLL*X compounds of claim 1 and the $CLL^+$ and $X^-$ components of the claimed compounds (where X is a low-molecular-weight organic or mineral acid) performed the same function in the same way to achieve the same result in aqueous solution.

129.    For instance, the '077 patent recites "poor solubility and instability in aqueous media" as a significant drawback of creatine (Ex. A, '077 patent at 2:30-31), and states that "a primary object of the present invention is the obtaining of novel Creatine derivatives . . . which derivatives should possess a higher stability" (*id.* at 3:49-52).

130.    The '077 patent states that such stability in aqueous media "has been achieved in the present invention by providing synthesis and using of Creatine derivatives having a general formula of NH=C(NH2)—N(CH3)—CH2—CO—NH—R*X, wherein: R is amino acid residue or substituted amino acid residue; X is lower-molecular-weight organic acid, or mineral acid . . . ." (Ex. A, '077 patent at 4:5-10 (emphases added).)  As set forth above, CLL*citrate is an

example of a compound with this claimed chemical formula, and CLL and citric acid are chemical forms of the components that comprise CLL*citrate.

131.    The Owoc patent also teaches that "[t]here is a critical need in the art for a creatine composition that is stable in aqueous systems." (Ex. H, Owoc patent at 3:17-18.)

132.    Dr. Liangxi Li, a named inventor of the Owoc patent, admitted to the USPTO in a signed declaration that "a 'Bang' formulation" containing CLL and citric acid in aqueous solution exhibited greater stability than a "neutral" formulation containing only CLL in aqueous solution in experiments that he supervised. (*See* Ex. M, USPTO Reexam. Control No. 90/013,933, April 30, 2018, Declaration of Dr. Liangxi Li at ¶¶ 11-13.)

133.    Based on fundamental chemical principles, $CLL^+$ and $citrate^-$ formed in the aqueous solution of Dr. Li's "'Bang' formulation." $CLL^+$ and $citrate^-$ are the components of the infringing compound CLL*citrate, as set forth above.

134.    John Owoc, another named inventor of the Owoc patent, who was also founder and CEO of Vital, emphasized the aqueous stability of CLL in the accused Bang® and Bang® energy drink products (which all contained at least one low-molecular-weight organic or mineral acid) in personal social media posts and in press releases on behalf of Vital. (*See, e.g.,* ¶ 81 of this Complaint (citing Exs. F, G.)

135.    For at least these reasons, the CLL*X compounds of claim 1 in aqueous solution, on the one hand, and the $CLL^+$ and $X^-$ components (where X is a low-molecular-weight organic or mineral acid) in aqueous solution in the Accused Instrumentalities, on the other hand, were equivalent under the doctrine of equivalents at least because, in light of the teachings of the '077 patent, they were insubstantially different and achieved the same desired stability in aqueous solution utilizing $CLL^+$ and $X^-$ ions.

136.    Therefore, the Accused Instrumentalities infringed claim 1 of the '077 patent via the doctrine of equivalents.

137.    Each Defendant used, sold, or offered for sale one or more Accused Instrumentalities that were directly or indirectly provided to that Defendant prior to October 10, 2022, as set forth in the exemplary evidence in Exhibit B.

138.    Therefore, each Defendant infringed Claim 1 of the '077 patent under the doctrine of equivalents.

139.    Claim 5 of the '077 patent recites: "The compound of claim 1, wherein the compound is in aqueous solution."  (Ex. A, '077 patent reexam certificate, at 1:27-28.)

140.    The Accused Instrumentalities infringed claim 1 both literally and under the doctrine of equivalents for the reasons set forth above in paragraphs 103-138, and those paragraphs are incorporated into this infringement analysis of claim 5 by reference.

141.    The Accused Instrumentalities are water-based drinks, and the Accused Instrumentalities list carbonated water as their first ingredient, as demonstrated (in orange) in the following annotated exemplary image of a Bang® nutrition label archived from Vital's bangenergy.com website prior to October 10, 2022:



(Ex. B-1, https://web.archive.org/web/20210120182724/https://bangenergy.com/shop/bang-12-pack/ (last accessed Nov. 13, 2024) (annotations added).)

142.    Therefore, the Accused Instrumentalities infringed claim 5 of the '077 patent literally and/or under the doctrine of equivalents, and each Defendant is liable for its infringing uses, sales, and offers for sale of the Accused Instrumentalities that were directly or indirectly provided to that Defendant prior to October 10, 2022.

143.    Amide Beverage has been harmed by each Defendant's infringing activities.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Amide Beverage demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Amide Beverage demands judgment for itself and against Defendants as follows:

A.      An adjudication that Defendants have infringed the '077 patent;

B.      An award of damages to be paid by Defendants, jointly, severally, or in the alternative, adequate to compensate Amide Beverage for Defendants' infringement of the '077 patent via Accused Instrumentalities directly or indirectly provided to Defendants prior to October 10, 2022, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial; and

C.      An award to Amide Beverage of such further relief at law or in equity as the Court deems just and proper.

Dated: November 18, 2024               DEVLIN LAW FIRM LLC

                                       */s/ Timothy Devlin*_____
                                       Timothy Devlin
                                       tdevlin@devlinlawfirm.com
                                       James Lennon
                                       jlennon@devlinlawfirm.com
                                       1526 Gilpin Avenue
                                       Wilmington, DE 19806
                                       Telephone: (302) 449-9010
                                       Facsimile: (302) 353-4251

                                       *Attorneys for Plaintiff*
                                       *Amide Beverage Company, LLC*