IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMIDE BEVERAGE COMPANY, LLC<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., WOOT.COM LLC, WALMART, INC., SAM'S WEST, INC., ALBERTSON'S, LLC, THE KROGER COMPANY, TARGET CORPORATION, GNC HOLDINGS, LLC, PEPSICO, INC., WALGREEN CO., CVS PHARMACY, INC., 7-ELEVEN, INC., CIRCLE K STORES INC., COSTCO WHOLESALE CORPORATION, AND H-E-B, LP,<br><br>Defendants. | Civil Action No. 4:24-cv-01022-SDJ<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS PEPSICO, INC., AMAZON.COM, INC., WOOT.COM LLC, WALMART, INC., SAM'S WEST, INC., ALBERTSON'S, LLC, THE KROGER CO., TARGET CORPORATION, WALGREEN CO., CVS PHARMACY, INC., 7-ELEVEN, INC., CIRCLE K STORES INC., AND COSTCO WHOLESALE CORPORATION'S**
<u>**REPLY IN SUPPORT OF MOTION TO STAY RETAILER CLAIMS**</u>

I.  **The Customer Suit Exception Applies and Warrants a Stay.**

    A.  **The Customer-Suit Exception Applies to Claims in a Single Suit.**

Amide wrongly asserts that *RPost Holdings, Inc. v. DocuSign, Inc.* says the customer-suit exception does not apply to defendants in the same suit. No. 2:12-CV-00683-JRG, 2019 WL 1982531, at *2 (E.D. Tex. May 3, 2019). That is wrong; the *RPost* court stayed customer claims based on stipulations like the Retailers' stipulations here. *Id*. at *2. The law is clear, and Amide cites nothing contrary, that it is squarely within the Court's discretion to grant a stay in these circumstances, just as Judge Gilstrap ordered in *RPost*. So, then, the question is not about the Court's authority in this situation (as Amide appears to suggest), but rather does a stay make sense under the facts here? Plainly it does.

    B.  **The Distinction Between Manufacturer and PepsiCo as Exclusive Supplier Is Meaningless; PepsiCo Is the True Defendant.**

Amide claims the customer-suit exception can *only* apply to a *manufacturer* and downstream customers, because *only* a manufacturer can be the "true defendant." ECF 225 at 9. Amide ignores that the "true defendant" in many stay cases has been an entity downstream of the manufacturer in the supply chain. *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, No. 2:21-CV-0453-RWS-RSP, 2023 WL 318466, at *3 (E.D. Tex. Jan. 19, 2023) (importer); *Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, No. 84-886-N, 1985 WL 72065, at *5 (D. Mass. Feb. 14, 1985) (importer); *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (distributor).[1] The real import of the "true defendant" designation is that the entity wants to "protect its customers, either as a matter of contract, or good business, or to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464

---

[1] The motion cited these cases. ECF No. 219 at 5 & n.2. Amide's brief addressed only *Nintendo*, and not this aspect of it.

1

(Fed. Cir. 1990) (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)). That is what PepsiCo—as the exclusive distributor of Bang during most of the damages period—is trying to do: stand up for its customers. PepsiCo is the "true defendant" as used in the stay cases. Vital, the manufacturer, is bankrupt and defunct and not even a possible defendant. PepsiCo is the viable entity at the top of the supply chain for almost all of the sales at issue here.

### C. The Retailers Stipulated to Decisions on All Liability Issues, Which Is Sufficient for a Stay.

Amide faults the Retailers for not agreeing to be bound by damages determinations as to PepsiCo. ECF No. 225 at 10–11. Amide cites *no case* holding that a stay of customer claims requires that stipulation. Instead, Amide cites *InfoGation Corp. v. ZTE Corp.*, where the court was confronted with *different "measure of damages" entirely* (reasonably royalty versus lost profits), not just customer-specific facts applied to the same measure (as is the case here). No. 16-CV-01901-H-JLB, 2016 WL 9525235, at *3 (S.D. Cal. Dec. 21, 2016). *See also Covves, LLC v. Dillard's, Inc.,* No. 18-CV-08518-RGK-AFM, 2019 WL 2022227, at *4 (C.D. Cal. Jan. 18, 2019) (also cited by Amide and also involving different measures of damages). Here, Amide's opposition acknowledges throughout that Amide intends to seek the same form of damages – a reasonable royalty – from PepsiCo and the Retailers alike.

Further separating this case from *InfoGation* and *Covves*, in *InfoGation*, the customers conceded that the case "will not resolve all of the infringement issues," 2016 WL 9525235, at *3, and in *Covves*, the customers did not agree to be bound by *any* determinations—neither liability nor damages, 2019 WL 2022227, at *4 n.7. The Retailers' robust stipulations here ensure that resolution on all the liability issues as to PepsiCo will bind them. These stipulations suffice: as stated in the motion (and not rebutted by Amide), the ongoing portion of the case "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every

2

issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Here, the Retailers have stipulated to be bound by the "major issues," namely infringement, invalidity, enforceability, and claim construction.

Amide hypothesizes that this failure to stipulate on damages will be inefficient. That is wrong for two reasons. *First*, Amide downplays the likelihood that PepsiCo "sweeps the board." ECF No. 225 at 11. Despite Amide's protestations otherwise, PepsiCo very well could win on an outcome-determinative issue like non-infringement or invalidity. This result would close the case with one trial or summary judgment decision.

*Second*, even if PepsiCo does not achieve a clean sweep, the remaining issues will be resolved with a marginal increase in effort. A stay would possibly result in vast savings of time and effort by the Court and the parties, and in any event would not measurably increase the time and effort required to resolve the entire case. If a stay is granted, (1) a jury will determine infringement and invalidity, and (2) *only if PepsiCo loses*, either (a) another jury will determine damages for any remaining, non-settling Retailers, or (b) those Retailers will challenge joinder, necessitating separate trials on damages.[2] If a stay is denied, either (1) an unwieldy trial of all Defendants together will be required to resolve all issues, or (2) more likely, the Retailers will raise Amide's improper joinder, resulting in separate trials on all issues – liability and damages.

## II.  Traditional Factors Also Justify a Stay.

Amide accuses PepsiCo and the Retailers of using the wrong factors in the traditional stay analysis. ECF No. 225 at 6, 12. Many of Amide's dated cases on this point do not involve infringement claims implicating the customer-suit exception. *See* ECF 225 at 6–7. For example,

---

[2] Amide says "there is no improper joinder here, and all but one of the Retailers have accepted that fact," alluding to H-E-B's motion to sever and transfer (ECF No. 146). ECF 225 at 12. But no Retailer has "accepted" the propriety of joinder; PepsiCo and the Retailers may challenge it when appropriate, depending on the result of this motion.

3

in *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, the Fifth Circuit held that it lacked jurisdiction over an appeal of the district court staying proceedings against a third-party defendant in favor of an arbitration between the plaintiff and third-party defendant. 761 F.2d 198, 202 (5th Cir. 1985).[3] And none of the patent cases Amide cites hold that these factors apply *only* to a stay pending PTO proceedings.[4] Instead, Amide overlooks many cases from this court applying the exact factors that PepsiCo and the Retailers apply in motions like this one. *See, e.g.*, *Dali Wireless, Inc. v. AT&T Corp.*, No. 2:22-CV-0012-RWS-RSP, 2023 WL 2898423, at *3 (E.D. Tex. Apr. 8, 2023); *Monterey Research, LLC v. Renesas Elecs. Corp.*, No. 2:24-CV-00238-JRG, 2025 WL 611046, at *2 (E.D. Tex. Feb. 25, 2025).

Regardless of which factors apply, Amide's arguments miss the mark. Amide's discussion of the burden on the Retailers of continuing to litigate ignores what will actually burden them if no stay is granted. For example, Amide does not mention depositions of the Retailers, let alone trial. Amide also presumes that joinder is proper and that this case will proceed—absent a stay—in a single trial against PepsiCo and the Retailers alike. But that faulty assumption will be tested, and result in far more duplicative effort, should the Retailers move to sever.

### III. Amide's View of Damages Is Flawed and Irrelevant.

Through its opposition, Amide notes varying royalty rates and revenue bases it may target. For instance, Amide cites a court order from Vital's bankruptcy, approving an agreed administrative expense claim that resolved post-petition infringement claims against Vital by

---

[3] In fact, the aspect of *Coastal* that Amide cites has been recognized as dictum because the Fifth Circuit reached only the jurisdictional issue. *Gov't of Virgin Islands v. Neadle*, 861 F. Supp. 1054, 1056 (M.D. Fla. 1994).

[4] *CyWee Grp. Ltd. v. Samsung Elecs. Co. Ltd.*, No. 217CV00140WCBRSP, 2019 WL 11023976, at *2 (E.D. Tex. Feb. 14, 2019) (applying the stay factors PepsiCo and the Retailers cited in their Motion to assess a stay pending IPR proceedings); *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 956 (N.D. Cal. 2019) (same); *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, No. 6:15-CV-01095-RWS, 2018 WL 3656491, at *2 (E.D. Tex. Aug. 1, 2018) (stay pending Federal Circuit appeal of PTAB's final written decisions on patents-in-suit).

4

ThermoLife, then the patent owner. ECF No. 225 at 2, 5 (citing ECF No. 225-2). That court, however, did not rule on *anything* related to a royalty, much less anything that distinguishes retailer sales from manufacturer or distributor sales. The court parroted Vital and ThermoLife's less-than-arms-length agreement that "a reasonable royalty for [the patent] would be 8 to 10 percent of sales of consumer products[.]" ECF No. 225-2 ¶ 10. Even Amide's counsel in this case explained to the bankruptcy court that "this [agreement on a royalty] is not res judicata" and that third-parties "can absolutely argue that that's not the reasonable royalty rate." *See* Ex. 1 at 19:5–8.[5] The bankruptcy court approved this language in its order *only because* it reflected nothing more than an agreement between Vital and ThermoLife. *Id*. 40:7–41:25. Nowhere in the order or the hearing leading up to it did the bankruptcy court—or anyone—explain that, as Amide now asserts, this applies to sales "at the retail level." *See generally* ECF Nos. 225-1, 225-2; Ex. 1.

Nor does Amide cite any other authority for the proposition that *retail sales* must be the damages base, let alone that the distinction between *retail* and *distributor* sales bears on the requested stay. Determining a royalty rate as to PepsiCo's accused sales will impact the amount that Amide may recover from the Retailers with or without a stay: any recovery by Amide against PepsiCo through any royalty rate applied to any PepsiCo sale to a Retailer will foreclose Amide from recovering from those Retailers again on the same sales. Amide may well try to argue in a PepsiCo-only trial that retail (not distributor) revenue provides the appropriate damages base for accused sales that flowed through PepsiCo. And the more practical reality is that determining a royalty rate against PepsiCo in the first instance (along with binding determinations on all liability issues) will give the Retailers and Amide data points helpful to settling remaining Retailer claims.

---

[5] He added: "[B]y no means would we ever suggest that a third party . . . was bound by this in any way and couldn't argue it, you know, couldn't take a different position, support that other position, advocate against the 8 to 10 percent rate, all of that is fair game." Ex. 1 at 19:12–16.

5

| | |
|---|---|
| Dated: July 30, 2025 | O'MELVENY & MYERS LLP<br>By: */s/ Timothy S. Durst*<br>Timothy S. Durst (TX #00786924)<br>tdurst@omm.com<br>John Kappos (TX #24130097)<br>jkappos@omm.com<br>Patrick V. Plassio (TX #24102362)<br>pplassio@omm.com<br>Grant E. Gibson (TX #24117859)<br>ggibson@omm.com<br>2801 North Harwood Street<br>Suite 1600<br>Dallas, TX 75201-2692<br>Telephone: (972) 360-1900<br>Facsimile: (972) 360-1901<br>*Attorneys for Defendant PepsiCo, Inc., Walmart Inc. and Sam's West, Inc.*<br><br>JACKSON WALKER LLP<br>By: */s/ Nathaniel St. Clair*<br>Nathaniel St. Clair, II<br>Texas State Bar No. 24071564<br>nstclair@jw.com<br>Blake T. Dietrich<br>State Bar No. 24087420<br>bdietrich@jw.com<br>2323 Ross Avenue, Suite 600<br>Dallas, Texas 75201<br>(214) 953-6000<br>(214) 953-5822 – Fax<br><br>Katharine Lee Carmona<br>State Bar No. 007873999<br>kcarmona@jw.com<br>100 Congress Avenue, Suite 1100<br>Austin, TX 78701<br>(512) 236-2000<br>(512) 236-2002 – Fax<br><br>*Attorneys for Defendant/Counter-Plaintiff 7-Eleven, Inc.*<br><br>KLARQUIST SPARKMAN, LLP<br>By: */s/ Caroline L. Desmond*<br>J. Christopher Carraway<br>Oregon Bar No. 961723<br>121 SW Salmon Street, Suite 1600 |

6

Portland, OR 97204
Telephone: (503) 595-5300
chris.carraway@klarquist.com
 Caroline L. Desmond
Texas State Bar No. 24126700
121 SW Salmon Street, Suite 1600
Portland, OR 97204
Telephone: (503) 595-5300
caroline.desmond@klarquist.com

*Counsel for Defendants AMAZON.COM, INC. and WOOT.COM LLC*

Pillsbury Winthrop Shaw Pittman
By:  */s/ William P. Atkins*
William P. Atkins
(Virginia Bar No. 47562)
Benjamin L. Kiersz
(Virginia Bar No. 47032)
Pillsbury Winthrop Shaw Pittman
1650 Tyson Blvd
McLean, Virginia 22102
Phone: 703-770-7900
Fax: 703/770-7901
Email: william.atkins@pillsburylaw.com
Email: benjamin.kiersz@pillsburylaw.com

Gregory P. Love
Steckler Wayne & Love, PLLC
(Texas Bar No. 24013060)
107 E. Main Street
Henderson, Texas 75652
Phone: 903-212-4444
Fax: 903-392-2267
Email: greg@swclaw.com

*Attorneys for The Kroger Co.*

Foley & Lardner LLP
By:  */s/ Jeanne M. Gills*
Jeanne M. Gills (IL 6225018)
R. Spencer Montei (IL 6313532)
Ariba Ahmad (IL 6343233)
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Phone:  (312) 832-4500

7

    Fax:  (312) 832-4700
    Email:  jmgills@foley.com
    aahmad@foley.com
    rmontei@foley.com
    Justin M Sobaje
    555 Flower Street, Suite 3300
    Los Angeles, California
    Phone:  (213) 972-4500
    Fax:  (213) 486-0065
    Email:  jsobaje@foley.com

    *Attorneys for Albertson's, LLC, Costco Wholesale Corporation, CVS Pharmacy, Inc., and Walgreen Co.*

    Foley & Lardner LLP
    By: */s/ Jeanne M. Gills*
    Jeanne M. Gills (IL 6225018)
    Ariba Ahmad (IL 6343233)
    321 North Clark Street, Suite 3000
    Chicago, Illinois 60654
    Phone:  (312) 832-4500
    Fax:  (312) 832-4700
    Email:  jmgills@foley.com
    aahmad@foley.com
    Justin M Sobaje
    555 Flower Street, Suite 3300
    Los Angeles, California
    Phone:  (213) 972-4500
    Fax:  (213) 486-0065
    Email:  jsobaje@foley.com

    *Attorneys for Target Corporation*

    GREENBERG TRAURIG, LLP
    By: */s/ Matthew J. Levinstein*
    Matthew J. Levinstein
    IL State Bar No. 6300343
    Email: levinsteinm@gtlaw.com
    77 West Wacker Drive, Suite 3100
    Chicago, IL 60601
    Telephone: (312) 456-1039
    Facsimile: (312) 456-8435
    Tyler Andrews
    CA State Bar No. 250686
    Email: tyler.andrews@gtlaw.com

                    18565 Jamboree Road, Suite 500
Irvine, CA 92612
Telephone: (949) 732-6500
Facsimile: (949) 732-6501
Joseph Griffith
TX State Bar No. 24045982
Email: joseph.griffith@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3666
Facsimile: (214) 665-5966

*Attorneys for Defendant Circle K Stores Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2025 I have electronically filed this Reply in Support of the Motion to Stay Retailer Claims with the Clerk of Court using the ECF system which will send notification of such filing to Plaintiff's counsel of record.

By: */s/ Timothy S. Durst*
Timothy S. Durst