UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

AMIDE BEVERAGE COMPANY,     §
LLC                         §
                            §
v.                          §     CIVIL NO. 4:24-CV-1022-SDJ
                            §
AMAZON.COM, INC., ET AL.     §

## MEMORANDUM OPINION AND ORDER

In this patent-infringement suit Defendant H-E-B, LP has filed its Motion to Sever and Transfer Venue. (Dkt. #146). Therein, H-E-B asks the Court to (1) sever Plaintiff Amide Beverage Company, LLC's claim against H-E-B, and (2) transfer the severed case to the San Antonio Division of the Western District of Texas. The motion has been briefed and a hearing was held on the matter. Because the Court concludes that neither severance nor transfer is warranted, H-E-B's motion is denied.

### I. BACKGROUND

Amide Beverage Company, LLC ("Amide") filed suit against H-E-B, LP ("H-E-B") and sixteen other defendants[1] for the alleged infringement of U.S. Patent No. 8,350,077 ("the '077 Patent").[2] (Dkt. #65). By selling Bang energy drink products

---

[1] The Defendants in this case are: Amazon.com, Inc.; Woot.com LLC; Walmart, Inc.; Sam's West, Inc.; Albertsons Companies, Inc.; Albertson's, LLC; The Kroger Company; Target Corporation; GNC Holdings, LLC; PepsiCo, Inc.; Walgreen Company; CVS Health Corporation; CVS Pharmacy, Inc.; 7-Eleven, Inc.; Circle K Stores Inc.; Costco Wholesale Corporation; and H-E-B, LP. (Dkt. #65 at 1).

Defendants Albertsons Companies, Inc. and CVS Health Corporation were voluntarily dismissed by Amide. (Dkt. #103, #105, #106). And, Defendant GNC Holdings, LLC and Amide entered into a stipulation of dismissal. (Dkt. #148, #151).

[2] Amide acquired the '077 Patent on November 4, 2024, "including all rights to recover past damages for infringement." (Dkt. #65 ¶ 108). Amide filed suit two weeks later. (Dkt. #1).

that contained "'Creatyl-L-Leucine' and at least one low-molecular-weight organic or mineral acid," each Defendant purportedly infringed claims 1 and 5 of the '077 Patent, which covers products with that same combination of ingredients. (Dkt. #65 ¶¶ 59, 110). For H-E-B, the alleged infringement period ran from November 18, 2018—the date H-E-B first purchased Bang energy drink products—to October 10, 2022. (Dkt. #65 ¶ 59); (Dkt. #146-2 ¶ 5).

Before addressing H-E-B's present motion for severance and venue transfer, it is worth discussing Amide's reasons for joining seventeen Defendants and filing suit in this venue. For joinder, according to Amide each Defendant (1) infringed the same claims of the same asserted patent, (Dkt. #65 ¶ 58); (2) used, sold, or offered to sell the same Bang energy drink products, (Dkt. #65 ¶ 59); and (3) acquired the Bang energy drink products, directly or indirectly, from the same source: Vital Pharmaceuticals, Inc. ("Vital"),[3] (Dkt. #65 ¶ 60). Based on these accusations, Amide maintains that its claims against the Defendants arise from "the same series of transactions originating with Vital and culminating with the infringing actions of each Defendant," and that the claims share common questions of fact. (Dkt. #65 ¶¶ 64–65). Amide also asserts it right to relief against the Defendants "jointly, severally, or in the alternative." (Dkt. #65 ¶ 62). As for venue, Amide states that this Court is proper because H-E-B committed acts of infringement in this judicial district,

---

[3] In April 2020, Vital entered into an exclusive distribution agreement with Defendant PepsiCo, Inc. to distribute Bang energy drink products nationwide. (Dkt. #65 ¶ 63). The majority of Defendants purportedly purchased the accused products through PepsiCo, Inc., while H-E-B purchased the accused products from Vital directly. *See* (Dkt. #146 at 6–7).

and because H-E-B maintains regular and established places of business here, including in Plano, Frisco, McKinney, and Allen, Texas. (Dkt. #65 ¶ 56).

In response to Amide's assertions concerning joinder and venue, H-E-B maintains that the patent infringement claims against it and the other Defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences, and that the Western District of Texas, San Antonio Division, is a clearly more convenient forum for Amide's claim against it. (Dkt. #146 at 5, 10). H-E-B therefore urges the Court to sever that claim and thereafter transfer the case to the Western District of Texas. (Dkt. #146 at 19).

## II. LEGAL STANDARDS

### A.  Claim Severance

In patent cases, motions to sever are governed by the Federal Rules of Civil Procedure and Section 19 of the Leahy-Smith America Invents Act (codified at 35 U.S.C. § 299). Because of the nature of such cases, Federal Circuit law controls. *In re EMC Corp.*, 677 F.3d 1351, 1354–55 (Fed. Cir. 2012); *see also id.* (explaining that the issue of joinder in patent cases hinges on an analysis of the accused acts of infringement). Together, the relevant statutes and precedent create the standard for determining whether patent claims against multiple defendants should proceed in a single action.

As a starting point, Federal Rule of Civil Procedure 21 governs misjoinder and nonjoinder of parties, and explains that "the court may at any time, on just terms, add or drop a party . . . [and] may also sever any claim against a party." FED. R. CIV.

P. 21. Given the broad latitude prescribed by Rule 21, "[t]he decision to deny a motion to sever is committed to the discretion of the district court." *In re Nintendo Co., Ltd.*, 544 F.App'x 934, 938 (Fed. Cir. 2013) (citing *In re EMC*, 677 F.3d at 1355). However, "[b]ecause Rule 21 does not provide a standard for district courts to apply in deciding whether parties or claims are misjoined, when considering a motion to sever under Rule 21, courts have looked to Rule 20 for guidance." *Id.* (citing *In re EMC*, 677 F.3d at 1356) (citation modified). Rule 20 permits joinder of multiple defendants in a single action only when (1) the claims against them are "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).

The Leahy-Smith America Invents Act institutes additional restrictions for joinder in patent cases, imposing a "more stringent [standard] than Rule 20" that "add[s] a requirement that the transaction or occurrence must relate to making, using, or selling of the *same* accused product or process." *In re Nintendo*, 544 F.App'x at 939 (referencing 35 U.S.C. § 299(a)) (emphasis added). Alongside this additional requirement, Section 299 is explicit that "accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b) ("Allegations Insufficient for Joinder"). Thus, joinder is permissible under Section 299 only when the following conditions are met:

> (1) [A]ny right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same

4

transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; *and*

(2) questions of fact common to all defendants . . . will arise in the action.

*Id.* at § 299(a) (emphasis added). Nevertheless, because joinder is permissive, these requirements are "necessary, but not sufficient, conditions for joinder." *In re Nintendo*, 544 F.App'x at 939. This means that even if the Section 299 requirements are met, joinder may be refused—or severance may be granted—"in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC*, 677 F.3d at 1360 (quotation marks omitted).

## B. Venue Transfer

Section 1404(a) permits the transfer of civil actions to other districts or divisions where the plaintiff could have properly brought suit. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section 1404(a), *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In patent cases, Section 1404(a) motions are governed by the law of the regional circuit. *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315; *see also id.* ("Th[e] 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled."). In this

5

context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (citation modified). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* (quotation marks omitted). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (citation modified).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* In considering the factors against one another, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at *7 (citation omitted); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs against transfer). Moreover, "[w]here there is no demonstration by the movant [that a particular factor weighs in its favor], let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022).

## C. Joint Severance and Transfer

"Section 1404(a) only authorizes the transfer of an entire action, not individual claims." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991); *see also Def. Distributed*, 30 F.4th at 433 (relying on *Chrysler Credit*). As such, to transfer a portion of a pending case to another district or division, district courts must first sever the action before effectuating the transfer. *Chrysler Credit*, 928 F.2d at 1518. If properly severed, the severed case is then transferred in its entirety to the transferee venue while the retained case remains in its entirety in the

7

transferor venue. *Id.* (citing *Wright & Miller's Federal Practice & Procedure* § 3845 (1986)). As a result, "even if the [motion to sever and motion to transfer] are evaluated wholly independently, the transfer motion cannot stand if the severance motion [is] wholly unjustified." *Def. Distributed*, 30 F.4th at 427.

With the intertwined nature of joint motions to sever and transfer in mind,[4] the Fifth Circuit has observed that "our jurisprudence suggests that the severance inquiry is different—and more focused on judicial efficiency—when it is combined with a [S]ection 1404 motion to transfer than when the severed case would remain in the original judicial district." *Id.* (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014)). Hence, when presented with joint severance and transfer motions, "[a] court must 'weigh carefully' the comparative inconvenience of splitting the suit versus the advantages to be gained from a partial transfer." *Id.* at 428. The individual claim(s) should not be severed and transferred to another court if "partial transfer would require the same issues to be litigated in two places." *Id.*; *see also id.* at 429 ("Severance and transfer requires two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs."). As for the public's interest in the matter, "the public has an interest in the comparative speediness and cost-savings from utilizing a single forum for the issues arising out of one episode." *Id.* (citing *Wright & Miller's Federal Practice & Procedure* § 3845 (4th ed. 2021)).

---

[4] *See generally ALSI Holdings, LLC v. Current Lighting Solutions, LLC*, No. 6:21-cv-1187-ADA, 2022 WL 3702268, at *5 (W.D. Tex. Aug. 26, 2022) ("As is evident from the recent decision in *Defense Distributed v. Bruck* . . . whether severance-and-transfer is appropriate is not a simple issue.").

Consistent with the foregoing principles, the Fifth Circuit has instructed that "in most multidefendant cases—other than those involving forum selection clauses—severance and transfer makes sense only where the administration of justice would be materially advanced and a defendant in one district is not 'so involved' in the transferred controversy that the same issues would have to be litigated twice." *Id.* at 429 (relying on *In re Rolls Royce*, 775 F.3d at 680–81; *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140 (5th Cir. 1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La., on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987)). The Federal Circuit has professed a similar sentiment for patent cases, stating that "when determining whether claims permissibly joined should be severed for purposes of seeking transfer . . . a court should consider whether it would be convenient or fair to keep the matters together." *In re Nintendo*, 544 F.App'x at 938. In sum, when considering a joint motion to sever and transfer, courts should ensure that the joint request, if granted, advances judicial economy and principles of fairness.

## III. DISCUSSION

H-E-B asks the Court to sever Amide's claim against it and thereafter transfer the severed case to the Western District of Texas. Because an individual claim cannot be transferred unless it is severed, the Court will first address H-E-B's request for severance before addressing the request for transfer. As discussed above, Federal Circuit precedent controls for this patent-case motion to sever, while Fifth Circuit precedent controls for the Section 1404(a) motion to transfer.

### A. Motion to Sever

The Court must resolve three questions to determine whether H-E-B and the other Defendants should remain joined or be severed: (1) do Amide's claims arise out of the same series of transactions related to the sale of the same accused product; (2) are there common questions of fact between all Defendants; and (3) will H-E-B be prejudiced if the claim is not severed? The Court addresses each question in turn.

### i.  Same transaction related to the sale of the same product?

Under Section 299(a)(1), joinder is permissible in patent cases when the claims against multiple defendants arise "out of the same transaction, occurrence, or series of transactions or occurrences" related to the "making, using, importing . . . offering for sale, or selling of the same accused product or process." 35 U.S.C. § 299(a)(1). In line with these requirements, Amide has alleged that the claims against Defendants (1) emerge from the same series of transactions or occurrences, and (2) involve the same accused product—the Bang energy drink products. (Dkt. #65 ¶¶ 62–64). H-E-B, in response, challenges both assertions. *See* (Dkt. #146 at 5–12).

The first step in deciding whether joinder is permissible under Section 299(a)(1) is to determine whether the "same accused product or process" is at issue. "[J]oinder is not appropriate where different products or processes are involved." *In re EMC*, 677 F.3d at 1359; *see also* 35 U.S.C. § 299(a)(1). Rather, "[j]oinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent." *In re EMC*, 677 F.3d at 1359. With this requirement in mind, H-E-B argues that "Amide's generic allegations about the

10

'Bang energy drink products'" are insufficient to establish that the same accused products are at issue because "Vital manufactured and sold at least 26 different flavors of those products, each with its own ingredients." (Dkt. #146). H-E-B further asserts that Amide has not pleaded facts showing that H-E-B sold, or offered for sale, the same flavors of Bang energy drink products as the other Defendants. For its part, Amide counters that H-E-B's argument "borders on the absurd," and states that all of the Bang energy drinks sold by Defendants allegedly infringe the same relevant claims of the '077 Patent "*regardless of flavor*." (Dkt. #169 at 7–8).

Amide has the better of this argument. The alleged infringement here hinges on whether the disputed products contained "'Creatyl-L-Leucine' and at least one low-molecular-weight organic or mineral acid," (Dkt. #65 ¶ 59), which provides no reference to the flavor of the Bang energy drinks sold. And, H-E-B does not otherwise explain how flavor can change this base formulation such that different flavors of the accused products would not be "the same in respects relevant to" the '077 Patent. *See* (Dkt. #172 at 4) (arguing vaguely that different ingredients in different flavors of the accused products *could* impact the operation of the chemical formulation claimed by the patent). Because flavor does not alter the substance of Amide's claims of infringement of the '077 Patent, the Court agrees that Amide has sufficiently alleged that all Defendants sold the same accused products.

The inquiry next turns to whether Amide's claims against the Defendants arise out of the same series of transactions or occurrences. The "sameness of the accused products" alone is not sufficient for joinder; rather, "[c]laims against independent

11

defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined . . . unless the facts underlying the claim of infringement asserted against each defendant *share an aggregate of operative facts.*" *In re EMC*, 677 F.3d at 1359 (emphasis added); *see also id.* (explaining that "sameness of the accused products" is not enough to establish that claims arise from the "same transaction"). Accordingly, to evaluate whether claims arise out of the same series of transactions or occurrences, courts look for a "'logical relationship' between the claims." *In re Apple, Inc.*, 650 F.App'x 771, 775 (Fed. Cir. 2015) (citing *In re EMC*, 677 F.3d at 1358–59); *see also id.* at 774–775 (applying the same "logical relationship" test for both Section 299 and Federal Rule of Civil Procedure 20). "The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC*, 677 F.3d at 1358.[5]

The thrust of H-E-B's argument is that this action involves "multiple streams of commerce and multiple transactions" because "[t]he fact that the Accused Products originated, either directly or indirectly, from the same manufacturer Vital does not

---

[5] The Federal Circuit has provided a non-exhaustive list of factors that courts may consider when determining whether the alleged infringement arises out of "the same transaction, occurrence, or series of transactions or occurrences." The court has stated:

> In addition to finding that the same product or process is involved, to determine whether the joinder test is satisfied, pertinent factual considerations include [(1)] whether the alleged acts of infringement occurred during the same time period, [(2)] the existence of some relationship among the defendants, [(3)] the use of identically sourced components, licensing or technology agreements between the defendants, [(4)] overlap of the products' or processes' development and manufacture, and [(5)] whether the case involves a claim for lost profits. The district court enjoys considerable discretion in weighing the relevant factors.

*In re EMC*, 677 F.3d at 1359–60.

transform all defendants' independent purchases and sales of those products into the same 'series of transactions.'" (Dkt. #146 at 11). In H-E-B's view, it is improperly joined alongside the other Defendants because (1) H-E-B did not purchase the accused products from Defendant PepsiCo, Inc., (Dkt. #146 at 9–10); and (2) H-E-B is a direct competitor of the other Defendants, (Dkt. #146 at 10). For these two reasons, H-E-B claims that it "has no relationship with any of the other defendants beyond Amide's allegation that they have infringed the same patent." (Dkt. #146 at 10). Amide responds that Section 299 does not confine patent actions to a single transaction, and that Vital's manufacturing and distribution of the same accused products to all Defendants constitutes a "series of transactions or occurrences" related to the sale, or offer for sale, of the accused products. (Dkt. #169 at 10). Amide further maintains that the purported "competitor carveout" raised by H-E-B is inapplicable in this case.

To support its proposed carveout for joinder, H-E-B relies, in part, on *Broadband iTV, Inc. v. Hawaiian Telecom, Inc.* for the proposition that "district courts have found that the presence, in an infringement action, of multiple defendants competing at the same level in the stream of commerce . . . would result in misjoinder under § 299," (Dkt. #146 at 10) (quoting No. 14-00169 ACK-RLP, 2014 WL 5580967, at *6 (D. Haw. Oct. 30, 2014)). This proposition is, however, just a rehash of the principles set forth in *In re EMC*, previously discussed herein; namely, that "[t]he sameness of the accused products is not enough [by itself] to establish that claims of infringement arise from the 'same transaction.'" 677 F.3d at 1359; *see also* 35 U.S.C. § 299(b) (stating that accused infringers may not be joined "solely on

13

allegations that they each have infringed the patent"). Hence, in situations where defendants are competitors and are not acting in concert (i.e., they are "independent defendants") *and* where the defendants are not linked together by "an aggregate of operative facts," the fact that the competitor-defendants have accused products that infringe the same patent is, by itself, insufficient for joinder. *See In re EMC*, 677 F.3d at 1359; *see also id.* (referring to "independent defendants" as defendants that "are not acting in concert"). But there is no blanket rule that prohibits defendants who are direct competitors, and who have not conspired or acted in concert, from being joined in a patent action, as H-E-B suggests, (Dkt. #146 at 10). Likewise, there is no "competitor carveout" applicable to H-E-B and the other Defendants here.

In any event, Amide does not present this action as a mere suit against direct competitors selling accused products that infringe the same patent. Instead, Amide asserts that all Defendants are linked by the fact that they obtained the same accused products, either directly or indirectly, from Vital. (Dkt. #65 ¶ 64); (Dkt. #169 at 6). That is, the Defendants had a common supplier for their products. (Dkt. #65 ¶ 64). This common origin thus creates an "aggregate of operative facts" because the patent-infringement claims turn on the same supply chain and the same "identically sourced components" for the accused-product sales. *See In re EMC*, 677 F.3d at 1359–60. In short, the alleged infringement stems from one manufacturer, one line of products, and one nationwide distribution network which links all of the Defendants. Based on these allegations, the Court finds that a logical relationship exists, and that the claims against all Defendants arise out of the same series of transactions or

14

occurrences. Section 299(a)(1)'s "same transaction, occurrence, or series of transactions or occurrences" requirement is therefore met.

Joinder of the Defendants in accordance with the requirements of Section 299(a)(1) was appropriate. This patent-infringement action arises out of the same series of transactions or occurrences and relates to the making, using, offering for sale, or selling of the same accused products. *See* 35 U.S.C. § 299(a)(1).

### ii. Common questions of fact?

In addition to the requirements set forth in Section 299(a)(1), Section 299(a)(2) dictates that joinder is permissible in patent cases "only if . . . questions of fact common to all defendants or counterclaim defendants will arise in the action," 35 U.S.C. § 299(a)(2). H-E-B presents four arguments in support of severance that are grounded in this joinder requirement: (1) that claim construction is a question of law, not fact; (2) that questions of fact common to all Defendants would only arise if all Defendants sold the same flavors of the accused products; (3) that H-E-B has no relationship with the other Defendants which would give rise to joint, several, or alternative liability; and (4) that questions of fact related to damages for H-E-B will be independent of the other Defendants. (Dkt. #146 at 12–13). For the reasons that follow, the Court finds that common questions of fact exist for all Defendants, including H-E-B.

To begin with, claim construction is "a question of law with *underlying* questions of fact." *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 (Fed. Cir. 2017) (emphasis added) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*,

15

574 U.S. 318, 325–26, 135 S.Ct. 831, 190 L.Ed.2d 719 (2015)). "Construction of written instruments often presents a question solely of law, at least when the words in those instruments are used in their ordinary meaning." *Teva Pharms. USA*, 574 U.S. at 326 (internal quotation marks omitted). But, "when a written instrument uses technical words or phrases not commonly understood, . . . those words may give rise to a factual dispute." *Id.* (internal quotation marks and citation omitted). According to Amide, claim construction in this case will feature questions of fact concerning "the level of skill in the art and the relevant field of inquiry," and "the nature and identity of the infringing contents of the Bang energy drinks." (Dkt. #169 at 12–13). In response, H-E-B does not rebut these potential questions of fact for claim construction, *and* H-E-B states elsewhere in its reply that coordination may be appropriate for matters like claim construction even if the claim were transferred. (Dkt. #172 at 5–6). Consequently, for purposes of claim construction, the Court finds that questions of fact common to all Defendants may arise in this action.

As for H-E-B's flavor-related argument, the Court has already rejected this point and determined that the same accused products are at issue for all Defendants. *See supra* Part III.A.i. The analysis thus turns to H-E-B's contention that it has no relationship with the other Defendants which could give rise to joint, several, or alternative liability. On this contention, the Court has also already rejected H-E-B's argument that it has no relationship with the remaining Defendants, instead finding that the patent-infringement claims here arise from the same series of transactions and occurrences. *See supra* Part III.A.i. Further, concerning liability, the Federal

16

Circuit has stated that an "allegation of joint liability is not required" for joinder. *In re EMC*, 677 F.3d at 1356. And, even if joint liability were not alleged, the Court finds that common questions of fact remain about H-E-B's potential several or alternative liability, given that the alleged infringement involves the same accused products and stems from the same series of transactions and occurrences with Defendants' common source, Vital. *See generally EMG Tech., LLC v. Dr. Pepper Snapple Grp. Inc.*, No. 6:10-CV-536, 2011 WL 13223548, at *2 (E.D. Tex. Sept. 23, 2011) (finding the defendant's liability theory argument against joinder unavailing).

The commonalities between each Defendant are also the reason that H-E-B's final argument fails. Questions of fact related to H-E-B's damages are inherently intertwined with the other Defendants' damages, given the similarities between each Defendant's alleged infringement. For example, the damages calculated may differ, but there will likely be overlap with respect to the calculation methodology employed and for ancillary factual inquiries. In short, the shared factual issues—from claim construction to the Defendants' alleged infringement and potential damage calculations—establish that there are common questions of fact for all Defendants. *See* 35 U.S.C. § 299(a)(2). Joinder under Section 299(a)(2)'s requirement is thus appropriate.

### iii. Will H-E-B be prejudiced if the claim is not severed?

As discussed, Amide's joinder of the Defendants, including H-E-B, in this action is proper under Section 299; the necessary conditions for joinder have been met. *See In re Nintendo*, 544 F.App'x at 939. Nevertheless, joinder is permissive, and

17

the Federal Circuit has stated that "joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'" *In re Nintendo*, 544 F.App'x at 939 (quoting *In re EMC*, 677 F.3d at 1360)); *see also id.* at 938 (explaining that, in the context of joint severance-and-transfer motions, "court[s] should consider whether it would be convenient or fair to keep the matters together").

H-E-B asserts that Amide's claim against it should be severed, regardless of whether joinder is proper, "to avoid prejudice to H-E-B and to advance principles of fundamental fairness." (Dkt. #146 at 13). H-E-B's specific concerns raised are that (1) unless severed, H-E-B will have limited opportunities to present its own defense to the jury; (2) there is potential for confusion and prejudice related to the flavors of the accused products, (3) H-E-B has a markedly different geographic footprint and supply chain than the other Defendants, and (4) H-E-B would be forced to litigate in an inconvenient forum. (Dkt. #146 at 13–14).

For H-E-B's first concern, Amide responds that H-E-B's defenses are not distinctive, and that "a comparison of H-E-B's answer with those of other Defendants reveals that H-E-B's defenses are not unique or individualized—they are instead substantially the same as the other defendants'." (Dkt. #169 at 14). The Court agrees. H-E-B fails to identify a specific defense that it could not otherwise present in a joint proceeding, nor is there any indication that severance is necessary to protect such a defense. H-E-B's concern regarding "limited opportunities" to present its own defense is therefore not well taken. As for the potential for confusion because of the different

18

flavors of Bang energy drinks, the Court finds this argument irrelevant for the reasons already discussed. The same is true for H-E-B's third assertion, because the Court has already determined that this action arises from the same series of transactions or occurrences. The mere fact that H-E-B has a smaller geographic footprint than the other Defendants, or that H-E-B purchased the accused products directly from Vital instead of through licensed distributor PepsiCo, Inc., is not a sufficient cause for concern to warrant severance on the basis of prejudice, delay, judicial economy, or fairness.

H-E-B's final contention, however, implicates considerations of a potential venue transfer based on convenience, and warrants a more substantive discussion. For joint severance-and-transfer motions, the Federal Circuit has indicated that courts have "considerable latitude to order severance *solely* for purposes of facilitating transfer." *In re Nintendo*, 544 F.App'x at 940 (emphasis added); *accord In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022) ("A court may sever any claim against a party to facilitate transfer." (citation modified) (quoting *In re Nintendo of Am., Inc.* 756 F.3d 1363, 1366 (Fed. Cir. 2014))). Other district courts, when weighing severance and transfer requests, have found that "strong interests in transfer" may outweigh "minimal lost efficiency in splitting [a] suit." *See, e.g.*, *DDC Tech., LLC v. Google LLC*, No. 3:22-CV-1263-B, 2023 WL 2518846, at *11 (N.D. Tex. Mar. 14, 2023). Thus, although joinder under Section 299 is proper in this case, the severance request may nonetheless be warranted if H-E-B establishes good cause for transfer. *See In re Nintendo*, 544 F.App'x at 941

19

(reprimanding the district court for basing its rulings solely on whether joinder was permissible without analyzing whether transfer was merited in the case).

However, for the reasons explained below, *infra* Part III.B., the Court finds that H-E-B has not established good cause for transfer. H-E-B has not shown that transfer to the Western District of Texas would be clearly more convenient. As a result, H-E-B's contention that Amide's claim against it should be severed regardless of whether joinder was proper does not support severance in this instance.

*     *     *

Having found that Amide's patent-infringement claims arise out of the same series of transactions or occurrences related to the sale of the same accused products, that there are common questions of fact between all Defendants, and that H-E-B will not be prejudiced if the claim against it is not severed, the Court concludes that H-E-B's request for severance should be denied.

## B. Motion to Transfer

The threshold inquiry on a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Upon review, the Court finds that venue would have been proper in the Western District of Texas. It is undisputed that H-E-B's principal office is located in

20

San Antonio, and Amide does not dispute that this action "might have been brought" in the Western District of Texas, San Antonio Division. *See* (Dkt. #146 at 15); (Dkt. #169 at 15). Having found that the threshold requirement for convenience transfer is met, the Court will analyze each of the private-interest and public-interest factors, *see Volkswagen II*, 545 F.3d at 315, to determine whether H-E-B has demonstrated that the Western District of Texas is a "clearly more convenient" forum than the Eastern District of Texas for Amide's claim against it.

### i.  Private-Interest Factors

*(1) Ease of Access to Sources of Proof.* When analyzing the first private-interest factor, courts interpret "sources of proof" to encompass "non-witness evidence, such as documents and other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020); *accord Volkswagen II*, 545 F.3d at 316. "The question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d at 288. Courts in this district have held that this factor weighs in favor of transfer "when a majority of the tangible and documentary evidence is located in the transferee court's district." *Arnold v. Remington Arms Co.*, No. 6:16-CV-74-RWS-KNM, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017) (collecting cases). In patent-infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple*, 979 F.3d at 1340 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the [accused infringer]'s documents are kept [generally] weighs in favor of transfer to that location." *Id.*

21

Despite technological advances, courts continue to consider the physical location of sources of proof for this private-interest factor. *See Volkswagen II*, 545 F.3d at 316. The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Id.* "Thus, the physical location of evidence—even if stored electronically—remains a relevant consideration for the convenience analysis." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-283-JRG, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021).[6] Even so, "when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358–59 (5th Cir. 2023) (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)); *cf. In re Planned Parenthood*, 52 F.4th at 630 ("The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature.").

H-E-B asserts that the first private-interest factor weighs in its favor because there is no connection between *any* source of proof and the Eastern District of Texas, and because there are electronic documents and data that are maintained from, or readily accessible in, San Antonio, Texas. (Dkt. #146 at 17). H-E-B concedes, however, that "most or all documents that will be collected in this case will be electronic." (Dkt. #146 at 17). Amide counters that this factor is neutral because the majority of

---

[6] For electronically stored sources of proof, courts should consider, in part, "the location of servers where documents are stored," as well as "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *Freedom Pats. LLC v. DISH Network Corp.*, No. 4:23-CV-303, 2024 WL 1147828, at *3 (E.D. Tex. Mar. 15, 2024) (quoting *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)).

documents are electronically stored and therefore "equally accessible in either forum." (Dkt. #169 at 17). Of note, however, Amide does not dispute H-E-B's assertion that there are no specific sources of proof in the Eastern District of Texas. Thus, for purposes of the first private-interest factor, the Court will assume that the sources of proof at issue are stored and maintained in San Antonio, but that the majority of those sources are stored electronically and are easily accessible. There does not appear to be any limitation on accessing these sources from other forums outside of the Western District of Texas. *See, e.g.*, *In re TikTok*, 85 F.4th at 359 (finding that the first private-interest factor weighed in favor of transfer where access to critical electronically stored evidence was restricted to certain employees, none of which resided in the transferor district). With these considerations in mind, the Court finds that the first private-interest factor weighs in favor of a convenience transfer. Nevertheless, the Court concludes that the impact of this factor is minimal, given that most of the evidence is electronic and accessible in this district.

*(2) Availability of Compulsory Process*. The second private-interest factor focuses on the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed, or regularly transacts business in person." *Id.* Because party witnesses almost invariably attend trial willingly, "[t]his

factor is directed towards *unwilling* third-party witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (emphasis added); *see also Def. Distributed*, 30 F.4th at 434 ("Access to compulsory process for non-party witnesses is the gravamen of the second private interest factor."). In light of this, "the availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood*, 52 F.4th at 630–31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 499 (6th Cir. 2016)).

Here, neither party identifies any unwilling non-party witnesses that reside, are employed, or regularly transact business in person within 100 miles of the Eastern District of Texas. *See generally Moore v. Unit Tex. Drilling, LLC*, No. 3:08-CV-2080-N, 2009 WL 10704741, at *3 (N.D. Tex. Nov. 17, 2009) ("[A] party seeking transfer must specifically identify unwilling witnesses[.]"). Rather, H-E-B asserts that this factor is neutral because the subpoena power will be the same for either the Western District of Texas or this district. (Dkt. #146 at 19). Amide also asserts that this factor is neutral because H-E-B has only identified potential party witnesses. (Dkt. #169 at 18). The Court agrees and finds that the second private-interest factor neither favors nor weighs against transfer.

*(3) Cost of Attendance for Willing Witnesses*. Private-interest factor three is one of the more important factors in a convenience-transfer analysis. *In re Apple Inc.*, 979 F.3d at 1341 (citing *In re Genentech*, 566 F.3d at 1343). It is clearly more convenient for witnesses to testify closer to home, and additional distance means

24

additional travel, meal, and lodging costs, as well as additional time away from the witness's regular employment. *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit uses a "100-mile threshold" to assess this factor, directing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quoting *Volkswagen I*, 371 F.3d at 204–05); *cf. In re Radmax*, 720 F.3d at 289 (indicating that transfer *within* 100 miles should also consider the costs for witnesses).

H-E-B's primary argument for transfer turns on the third private-interest factor. According to H-E-B, the following considerations weigh in favor of transfer: (1) its most significant witnesses reside and work in San Antonio,[7] (2) its headquarters are located "*less than 1 mile*" from the federal courthouse in San Antonio, (3) H-E-B's witnesses would have to travel "*nearly 300 miles*" to the federal courthouse in Plano, Texas, and (4) H-E-B is not aware of any potential witnesses in the Eastern District of Texas. (Dkt. #146 at 15–16). As for Amide's potential witnesses, H-E-B asserts that they either live out-of-state in Arizona or abroad in Russia, and that travel to either San Antonio or Dallas will be equally convenient. (Dkt. #146 at 16–17). In response, Amide asserts that the Court should give less

---

[7] The witnesses identified by H-E-B are as follows: (1) Sylvia Everitt ("Everitt"), a Business Development Manager for H-E-B's Healthy Living sector and the claimed "most significant witness"; (2) Brenda Bermudez, a Business Development Associate for H-E-B's Healthy Living sector; and (3) Chelsea Rhodes, a Business Unit Director for H-E-B's Healthy Living sector. (Dkt. #146 at 15–16). All three witnesses reside and work in San Antonio, Texas. According to Everitt, the accused products—the Bang energy drinks—fall under H-E-B's Healthy Living sector. (Dkt. #146-2 ¶ 8) (Everitt's declaration).

25

weight to the costs of party witnesses as opposed to non-party witnesses, and that this factor therefore only slightly favors H-E-B. (Dkt. #169 at 16–17) (relying, in part, on *Hillestad v. LLOG Exploration Co.*, No. 3:17-CV-341, 2018 WL 4938708, at *4 (S.D. Tex. Sept. 20, 2018) (collecting cases for this proposition)). However, the Fifth Circuit has not made this distinction. *See, e.g., Volkswagen II*, 545 F.3d at 317 (including plaintiffs in the court's analysis on costs of attendance for witnesses in the case); *In re TikTok*, 85 F.4th at 361 (making no distinction between party and non-party witnesses); *In re Planned Parenthood*, 52 F.4th at 631 (same). The Court will weigh the cost of attendance for all witnesses equally in this matter. And, after considering both parties' positions, it is apparent that the Western District of Texas, San Antonio Division, is the more convenient forum for the witnesses identified by the parties. *See* (Dkt. #146, #169).

Even so, the Western District of Texas is adjacent to this district and is within the same state, thus the burden on willing witnesses is not as arduous as, say, traveling to the Northern District of California. *See Volkswagen II*, 545 F.3d at 315 ("the factor . . . increases in direct relationship to the additional distance to be traveled"); *compare* (Dkt. #146 at 16) ("nearly 300 miles" to San Antonio, Texas), *with Gatekeeper Sols., Inc. v. Darktrace, Inc.*, No. 4:24-CV-723-SDJ, 2025 WL 3231248, at *4 (E.D. Tex. Nov. 19, 2025) ("more than 1,700 miles from the Eastern District of Texas" to the Northern District of California). Accordingly, because this factor increases in direct relationship to the distance traveled, the third private-interest factor weighs only slightly in favor of a convenience transfer.

26

*(4) All Other Practical Problems.* The fourth private-interest factor considers "all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor "serves as a catchall for concerns that may weigh for or against transfer." *Adaptix, Inc. v. HTC Corp.*, 937 F.Supp.2d 867, 876 (E.D. Tex. 2013). Hence, "practical problems" encompasses judicial economy considerations. *Tex. Data Co., L.L.C. v. Target Brands, Inc.*, 771 F.Supp.2d 630, 645 (E.D. Tex. 2011) (citing *In re Volkswagen of Am., Inc.* (*Volkswagen III*), 566 F.3d 1349, 1351 (Fed. Cir. 2009)); *accord In re Rolls Royce Corp.*, 775 F.3d at 678 (explaining that transfer considerations include "facilitating judicial economy"). There are also concerns of duplicative litigation under this factor: "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351 (relying on *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)); *see also In re Rolls Royce*, 775 F.3d at 679 ("[S]ection 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute.").

As for party conduct, the fourth private-interest factor weighs against transfer when the movant "'inexcusably delayed' bringing their motion until 'late in the litigation.'" *In re TikTok*, 85 F.4th at 362 (quoting *In re Planned Parenthood*, 52 F.4th at 631). On the other hand, "'garden-variety delay associated with transfer is not to be taken into consideration when' weighing this factor." *Id.* (quoting *In re Radmax*, 720 F.3d at 289).

27

H-E-B argues that this factor weighs in its favor because the case is still in an early stage of litigation, claim construction hearings have not occurred, and the parties have not produced significant discovery at the time of filing of the motion to sever and transfer.[8] (Dkt. #146 at 19). Amide rebuts that transferring its claim against H-E-B to the Western District of Texas will result in duplicative proceedings, a waste of judicial resources, and a risk of inconsistent rulings. (Dkt. #169 at 18–19). There is, however, an additional consideration raised by H-E-B that is relevant to the fourth private-interest factor. H-E-B offers that "[t]o the extent that the transferee court so desires, H-E-B would be open to coordination with the instant Court on claim construction issues." (Dkt. #146 at 19). Considering H-E-B's proposition, as well as the Court's previous determinations for severance—that this case has significant overlap between all of Amide's claims against each Defendant, *see supra* Part III.A— the Court finds no merit in H-E-B's argument that the fourth private-interest factor weighs in its favor. The Supreme Court did not mince words when it cautioned against the convenience transfer of cases leading to duplicative litigation: "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26.

---

[8] In considering H-E-B's arguments, the Court notes that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F.App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)).

With the Supreme Court's admonition in mind, the Court notes that all signs point to striking similarities between Amide's claims against H-E-B and the remaining Defendants. H-E-B itself largely concedes this point by admitting that coordination may well be warranted for claim construction issues if this case were transferred. Because the concern for parallel litigation is evident here, judicial economy points against, rather than in favor of, convenience transfer. *See In re Rolls Royce*, 775 F.3d at 681 (instructing that judicial economy, "[w]hile . . . not the sole consideration for a district court facing a severance-and-transfer motion, . . . retains a cardinal role"). Relatedly, the Court concludes that the near-certain duplicative litigation resulting from H-E-B's suggested transfer would result in Amide "having to tell the same story in two courts"—a clear abuse of judicial resources and the judicial process. *Def. Distributed*, 30 F.4th at 430. For these reasons, the fourth private-interest factor weighs heavily against a Section 1404(a) transfer.

### ii. Public-Interest Factors

The parties concur that the public-interest factors concerning the forum's familiarity with governing law and the avoidance of unnecessary conflict-of-law problems are neutral in this convenience-transfer analysis. (Dkt. #146 at 19); (Dkt. #169 at 18). The Court agrees. Both this Court and the Western District of Texas are competent to resolve patent-infringement disputes. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (agreeing with the district court's statement that "[p]atent claims are governed by federal law," and as such "both [courts are] capable of applying patent law to infringement claims"). And no conflict-

of-law issues have been presented in this matter. The Court thus turns to the remaining public-interest factors.

*(1) Court Congestion.* The first public-interest factor concerns "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit has recently spoken to this factor, noting that it is "a weak signal at best," compared to the other private-interest and public-interest factors, to determine whether a convenience transfer is warranted. *In re Google, L.L.C.*, No. 25-40788, 2026 WL 934924, at *2 (5th Cir. Apr. 7, 2026). "As we have said, the court-congestion factor is the most 'speculative' of the *Volkswagen* factors, because 'measuring congestion is easier said than done.'" *Id.* (quoting *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024)).

Here, H-E-B identifies this Court's robust docket, noting that the Court had "540 open cases" as of March 18, 2025. (Dkt. #146 at 18); (Dkt. #146-7). In contrast, according to the same source—LexMachina—four of the five judges in the San Antonio Division had "less than 270 open cases" as of March 19, 2025. (Dkt. #146 at 18); (Dkt. #146-8). Based on this data, in H-E-B's view, the first public-interest factor favors transfer. In response, Amide contends that H-E-B fails to show how a convenience transfer will "meaningfully alleviate any alleged administrative difficulties," and that this factor therefore weighs against transfer or is, at most, neutral. (Dkt. #169 at 16).

As an initial point, the Court notes that neither party addresses case-resolution speed. Other courts in this district, when considering the first private-

interest factor, have found that the factor "favors a district that can bring a case to trial faster." *Adaptix*, 937 F.Supp.2d at 877 (citing *In re Genentech*, 566 F.3d at 1347). In this regard, the Court notes that, as of March 31, 2025, this district's median time from filing to trial for civil actions was 25.9 months, while the Western District of Texas's median time was 33.4 months; as for median time to civil-case disposition, this district's pace was 7.4 months while the Western District of Texas's was 7.6 months.[9] But numbers alone—out of context—can be misleading. These district-wide statistics do not reflect the Sherman Division's disproportionately high caseload, and are likely skewed by lighter caseloads in other divisions within this district. *Gatekeeper Sols., Inc.*, 2025 WL 3231248 at *5. In addition to the numbers, the Court also notes that H-E-B does not account for potential delays in a transferee court associated with the anticipated coordination of matters such as claim construction, if the case were transferred.

All this is to say that the information before the Court on the "congestion" factor does not move the meter—so to speak—as to the convenience of transfer. The comparative data on median length of proceedings in this district and the Western District of Texas shows that, like this Court, the judges in the Western District of Texas are very busy. And as the Fifth Circuit has explained, the difficulties in prognosticating whether a particular case would move faster if transferred to another district provides a murky signal at best. *See In re Google*, 2026 WL 934924, at *2.

---

[9] *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2025)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-court-management-statistics/n-a-1.

Further, given the unusual circumstances in this case and the potential for delays associated with coordination if the case were moved, any such "efficiency" prediction here would be even more tenuous. Altogether, the Court considers this "most speculative" factor to be neutral.

(2) *Local Interests*. The second public-interest factor considers "the local interest in having localized interests decided at home." *Id*. The focus is "not merely [on] the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed*, 30 F.4th at 435 (quoting *In re Apple*, 979 F.3d at 1345). "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Id*. Indeed, "the place of the alleged wrong is one of the most important factors in venue determinations," *id*., and thus "this factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *In re TikTok*, 85 F.4th at 364 (quoting *Volkswagen II*, 545 F.3d at 317–18). The second public-interest factor can also weigh in favor of convenience transfer when "the citizens of [the transferee district] have a greater stake in the litigation than the citizens of [the transferor district]." *Id*. at 364 (quoting *In re Planned Parenthood*, 52 F.4th at 632).

For this factor, H-E-B argues that the Western District of Texas has a stronger stake in the litigation because H-E-B is headquartered there and is purportedly the largest employer in San Antonio. (Dkt. #146 at 17–18). Furthermore, although H-E-B operates one corporate office and six grocery stores in the Eastern District of Texas,

32

Sherman Division, H-E-B asserts that the local interest in the Western District of Texas, San Antonio Division, is greater because H-E-B operates sixty-six grocery stores and fifteen facilities there. (Dkt. #146 at 18). And, most important to the second public-interest factor analysis, H-E-B asserts that it "did not sell any of the Accused Products in the Sherman Division during the relevant period." (Dkt. #146 at 18). Specifically, according to the declarations of Sylvia Everitt—a Business Development Manager for H-E-B's Healthy Living sector—"no Bang energy drink products were sold [at an H-E-B grocery store located in the Sherman Division] prior to October 10, 2022." (Dkt. #146-2 ¶ 7) (citation modified). The purported lack of sales in this division stems from the assertion that H-E-B opened its first grocery store in the Sherman Division in September 2022. (Dkt. #146-2 ¶ 7). In response, Amide only generally asserts that "[t]he sale of allegedly infringing products occurred throughout Texas, including in both this Court and in the San Antonio Division." (Dkt. #169 at 18). Amide's sur-reply also argues that the second public-interest factor is neutral because "this District has extensive experience handling complex patent cases and a strong interest in claims involving products sold statewide." (Dkt. #182 at 8).

As a starting point, the parties' connections to each forum leans in favor of transfer—H-E-B is headquartered in, and has a sizeable presence in, the San Antonio area while Amide does not have similar substantial connections to this district. Accordingly, on this point, the second public-interest factor weighs in H-E-B's favor. *See Def. Distributed*, 30 F.4th at 435 (indicating that "the parties' significant connections to each forum" play a part in weighing this factor). Next, for the place of

33

the alleged wrong, it appears that Amide concedes that the sale of the accused products in the Eastern District of Texas, Sherman Division, during the period of November 18, 2018, to October 10, 2022, was minimal, if not zero (as asserted by H-E-B). The question remains, however, whether the sale of Bang energy drinks in the Eastern District of Texas as a whole was minimal or not. *See In re TikTok*, 85 F.4th at 364 (discussing the standards for the second public-interest factor based on the district as a whole, and not on a particular division within the district). H-E-B does not rebut that accused products were sold elsewhere in this district, outside of the Sherman Division. *See* (Dkt. #172 at 6). Hence, because the burden of proof is on H-E-B for a Section 1404(a) transfer, the Court must assume that Bang energy drinks were sold elsewhere in the Eastern District of Texas, even if not sold in this division. Nevertheless, it does appear evident that the nexus of accused product sales was in the Western District of Texas. *See* (Dkt. #146-2 ¶ 6) (explaining that the purchase and distribution of the accused products was primarily based in San Antonio and San Marcos, Texas). For this reason, the location of Amide's alleged injuries is more prominently centered in the Western District of Texas than this district. The Court thus concludes that the second public-interest factor weighs in favor of transfer.

### iii. Weighing the Factors

After considering the four private-interest and two public-interest factors at issue in the motion to transfer, the Court finds as follows: (1) although minimal, the first private-interest factor weighs slightly in favor of transfer; (2) the second private-interest factor is neutral; (3) the third private-interest factor weighs slightly in favor

of transfer; (4) the fourth private-interest factor weighs heavily against transfer because of the concern for duplicative litigation; (5) the first public-interest factor is neutral; and (6) the second public-interest factor weighs in favor of transfer. In sum, one factor weighs in favor of transfer, two weigh slightly in favor, and one cuts strongly against transfer. The rest are neutral. *See generally In re Radmax*, 720 F.3d at 290 n.8 (explaining that the proper methodology is not to simply add up the factors and see what the resulting "score" is).

To be sure, a convenience transfer to the Western District of Texas may be personally favorable to H-E-B because of its significant presence there. But the convenience-transfer analysis also shows that, if Amide's claim against H-E-B were to be severed and transferred, there are significant concerns that Amide will have to litigate the same issues in two different district courts. In this patent-infringement suit, the only substantive difference between H-E-B and another Defendant like Walmart, Inc. appears to be that the various defendants sold differing quantities of the same accused products. Under the circumstances, requiring Amide to try its claims against similarly situated defendants in two different forums is hardly "convenient" or "efficient" for the Plaintiff or the courts.

With all of this in mind, and after weighing the private-interest and public-interest factors, the Court finds that H-E-B has not demonstrated that a Section 1404(a) transfer is both for the convenience of all parties involved and in the interest of justice. *See Volkswagen II*, 545 F.3d at 315. The fact that litigating Amide's claim in the Western District of Texas is more convenient for H-E-B is not enough, standing

35

alone, to justify transfer. *See Def. Distributed*, 30 F.4th at 433 ("[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer[.]"). Any such personal convenience for H-E-B is outweighed by the inefficiency, expense, and burden of administering essentially the same litigation in two different district courts. *See Cont'l Grain Co.*, 364 U.S. at 26; *Def. Distributed*, 30 F.4th at 428. For these reasons, H-E-B has not demonstrated that the transferee venue is clearly more convenient than this district.

## IV. CONCLUSION

For the reasons provided, it is therefore **ORDERED** that Defendant H-E-B, LP's Motion to Sever and Transfer Venue, (Dkt. #146), is **DENIED**.

**So ORDERED and SIGNED this 28th day of April, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE