UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMIDE BEVERAGE COMPANY, LLC | § § § | |
| v. | § § | CIVIL NO. 4:24-CV-1022-SDJ |
| AMAZON.COM, INC., ET AL. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Stay Retailer Claims.[1] (Dkt. #219). Therein, the movants ask the Court to stay Plaintiff Amide Beverage Company, LLC's patent-infringement claims against Defendants Amazon.com, Inc., Woot.com LLC, Walmart, Inc., Sam's West, Inc., Albertson's, LLC, The Kroger Company, Target Corporation, Walgreen Company, CVS Pharmacy, Inc., 7-Eleven, Inc., Circle K Stores, Inc., and Costco Wholesale Corporation pending a final resolution of the claim against Defendant PepsiCo, Inc. (Dkt. #219-2). The motion has been fully briefed. After full consideration, the Court concludes that the motion should be denied.

## I. BACKGROUND

Amide Beverage Company, LLC ("Amide") filed suit against seventeen defendants[2] for the alleged infringement of U.S. Patent No. 8,350,077 ("the '077

---

[1] Only Defendant H-E-B, LP did not join this motion.

[2] The Defendants in this case are: Amazon.com, Inc.; Woot.com LLC; Walmart, Inc.; Sam's West, Inc.; Albertsons Companies, Inc.; Albertson's, LLC; The Kroger Company; Target Corporation; GNC Holdings, LLC; PepsiCo, Inc.; Walgreen Company; CVS Health Corporation; CVS Pharmacy, Inc.; 7-Eleven, Inc.; Circle K Stores Inc.; Costco Wholesale Corporation; and H-E-B, LP. (Dkt. #65 at 1). Defendants Albertsons Companies, Inc. and CVS Health Corporation were voluntarily dismissed by Amide. (Dkt. #106). And, Defendant GNC Holdings, LLC and Amide entered into a stipulation of dismissal. (Dkt. #151).

1

Patent"). By selling Bang energy drink products that contained "'Creatyl-L-Leucine' and at least one low-molecular-weight organic or mineral acid," each Defendant purportedly infringed claims one and five of the '077 Patent, which cover products with that same combination of ingredients. (Dkt. #65 ¶¶ 59, 110).

Pertinent to the motion here, although all Defendants are alleged to have sold or offered to sell the same Bang energy drink products, (Dkt. #65 ¶¶ 3–19), not all Defendants sold the accused products directly to consumers. *See* (Dkt. #65 ¶ 63). Defendants Amazon.com, Inc., Woot.com LLC, Walmart, Inc., Sam's West, Inc., Albertson's, LLC, The Kroger Company, Target Corporation, Walgreen Company, CVS Pharmacy, Inc., 7-Eleven, Inc., Circle K Stores, Inc., and Costco Wholesale Corporation (together, the "Retail Defendants"), as well as Defendant H-E-B, LP ("H-E-B"), sold the accused products as retail sellers. (Dkt. #65 ¶¶ 63–64). Meanwhile, Defendant PepsiCo, Inc. ("PepsiCo") sold the accused products as a distributor, having entered into an exclusive distribution agreement with the energy-drink manufacturer Vital Pharmaceuticals, Inc. ("Vital") in April 2020. (Dkt. #65 ¶ 63). PepsiCo was Vital's exclusive distributor to the Retail Defendants for approximately two-thirds of Amide's claimed infringement period,[3] while H-E-B purchased the Bang energy drink products from Vital directly during this same period of time. (Dkt. #65 ¶¶ 63–64); *see also* (Dkt. #257 at 2 n.3).

---

[3] Vital and PepsiCo entered into an exclusive distribution agreement for the Bang energy drink products in April 2020. (Dkt. #65 ¶ 63). Amide's claimed infringement period runs from November 18, 2018, to October 10, 2022. *See* (Dkt. #65 ¶ 59); (Dkt. #219 at 4). Therefore, PepsiCo was the exclusive distributor of the accused products to the Retail Defendants for approximately thirty months of a forty-six month period (~2/3rds).

Given the relationship between the Defendants, PepsiCo and the Retail Defendants now ask the Court to stay Amide's claims against the Retail Defendants while the claims against PepsiCo and H-E-B proceed. The movants assert that the customer-suit exception applies to their stay request. (Dkt. #219 at 2).

## II. LEGAL STANDARD

In certain patent cases, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). In such circumstances, the Federal Circuit has recognized a customer-suit exception "to the general rule that favors the forum of the first-filed action." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

Typically, "courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). And when both the manufacturer and their customers are joined in a *single* suit, courts have generally held that the exception does not apply. *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-CV-683-JRG, 2019 WL 1982531, at *2 (E.D. Tex. May 3, 2019); *see also Heinz Kettler GMBH & Co. v. Indian Indus., Inc.*, 575 F.Supp.2d 728, 730 (E.D. Va. 2008) ("[T]he customer suit exception is inapplicable in this case. Because plaintiffs have simultaneously sued both the manufacturer . . . and the customer . . . this case does not present a situation where two suits are pending in different jurisdictions, nor a danger of

3

inconsistent conclusions about the infringement of plaintiffs' patent."). Some courts, however, have applied the "principles" of the exception to sever the manufacturer from a single action and stay the retailer-defendants in the original action when the manufacturer's liability is predicate to recovery from any of the customer-defendants. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3 (E.D. Tex. Apr. 26, 2016) (collecting cases) (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)); *see also In re Dell Inc.*, 600 F.App'x 728, 730 (Fed. Cir. 2015) ("The policies expressed in the duplicative-case context are certainly relevant in a district court's decision how to proceed within the context of a single case.").

Of note, the customer-suit exception is "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against [the] possibility of abuse." *Spread Spectrum Screening LLC*, 657 F.3d at 1357 (quoting *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)). The Federal Circuit has explained that "the manufacturer is the true defendant in the customer suit," given that "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464 (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977)). Some courts have extended this preferential treatment for manufacturers to distributors, but only when the distributor served as a sole supplier of the accused

products. *E.g.*, *Westport Fuel Sys. Can., Inc. v. Ford Motor Co.*, No. 2:21-CV-453-RWS-RSP, 2023 WL 318466, at *1 (E.D. Tex. Jan. 19, 2023).

In determining whether to apply the customer-suit exception, courts in this district have considered three factors: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909-JRG, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015); *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018) (similar). However, the "primary question [in deciding whether the exception applies] is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463; *see also Tegic Commc'ns Corp.*, 458 F.3d at 1343 (explaining that "the guiding principles in the customer suit exception cases are efficiency and judicial economy").

### III. DISCUSSION

### A. Customer-Suit Exception

The controversy here involves only a single action and does not count Vital, the manufacturer of the accused products, among the codefendants.[4] Thus, PepsiCo and the Retail Defendants' stay request is not for a traditional application of the

---

[4] According to Amide, Vital was liquidated during Chapter 11 bankruptcy proceedings in 2023 and "no longer exists as a going concern." (Dkt. #65 ¶¶ 61, 106).

5

customer-suit exception. *See, e.g., Katz*, 909 F.2d at 1464 (involving multiple suits and a manufacturer-defendant). To the extent that the movants request that Amide's claims against the Retail Defendants be stayed pursuant to the exception, the Court concludes that the customer-suit exception is inapplicable here; PepsiCo and the Retail Defendants have been joined in a single suit, so there is no earlier-filed litigation to stay while the later-filed case against the manufacturer, or supplier, proceeds. *See RPostHoldings, Inc.*, 2019 WL 1982531, at *2 ("[T]he exception only applies where there are *multiple* suits that involve the same allegations of infringement against a manufacturer and its down-stream customers.");[5] *Monterey Rsch., LLC v. Renesas Elecs. Corp.*, No. 2:24-CV-238-JRG, 2025 WL 611046, at *2 n.1 (E.D. Tex. Feb. 25, 2025) (explaining that "[i]t is important to recall that the customer-suit exception developed as an exception to the first-to-file rule").

Notwithstanding that the exception is inapplicable, the movants maintain that the *principles* of the exception support a stay here because of PepsiCo's relationship with the Retail Defendants. *See* (Dkt. #219 at 6 n.2). The Federal Circuit has advanced this approach, explaining in *In re Nintendo of America, Inc.* that the "same general principles" can apply in a single action where one of the defendants is the "true defendant" in that action, even when "the circumstances of th[at] case differ

---

[5] The movants argue that *RPost Holdings, Inc.* does not stand for the proposition that "the customer-suit exception does not apply to defendants in the same suit," because the court in *RPost Holdings, Inc.* stayed the customer claims. (Dkt. #228 at 2). This assertion is false. *RPost Holdings, Inc.* clearly states that the exception does not apply to a single case that encompasses all defendants. 2019 WL 1982531, at *2. Nevertheless, the court stayed the customer claims in that case because the parties jointly stipulated to a stay of those claims. *See id.* ("The Court expressly relies on these stipulations as the basis for its decision . . . [and] rejects application of the customer-suit exception[.]").

6

from those of the customer-suit exception." 756 F.3d at 1365. In applying the underlying principles of the customer-suit exception, however, the Court finds that those principles do not support the requested stay.

First, PepsiCo, as a distributor of the accused products, is not in a position comparable to a manufacturer in this case. *Cf. Westport Fuel Sys. Can.*, 2023 WL 318466, at *3 (treating a distributor-defendant in a related action as a manufacturer under the customer-suit exception because it was "the only entity that imports and sells the accused devices in the United States"). Vital sold Bang energy drinks to retailers directly in addition to its distribution agreement with PepsiCo, and the Retail Defendants purchased the drinks from other sources prior to PepsiCo's exclusive distribution agreement, (Dkt. #219 at 11) ("Defendants acknowledge that at least some portion of this case is attributable to Bang that the [Retail Defendants] received from a source other than PepsiCo."). PepsiCo may have an interest in protecting its own customers, but, unlike the distributor in *Westport Fuel Systems Canada*, PepsiCo does not claim that it "was the sole supplier of the accused product . . . and would be directly responsible for any infringement," 2023 WL 318466, at *3. Hence, the Court concludes that PepsiCo does not have the same interests as a manufacturer or "true defendant."

Second, the Defendants are similarly situated. PepsiCo, the Retail Defendants, and H-E-B sold the accused products as follows: (1) PepsiCo bought Bang energy drinks from Vital and then sold those same drinks to the Retail Defendants as a distributor, (2) the Retail Defendants sold those drinks to consumers, and (3) H-E-B

bought Bang energy drinks from Vital directly and then sold those same drinks to consumers. In none of these transactions did any Defendant alter the accused products after purchase; each only sold the same drinks to the next buyer. Thus, there is nothing akin to a customer-manufacturer relationship between PepsiCo and the Retail Defendants in this case—all of the Defendants were mere resellers. *See Westport Fuel Sys. Can.*, 2023 WL 318466, at \*2 (concluding that a defendant was a "mere reseller" because that defendant only used the accused product in its own products and did not modify or customize the accused product).

In sum, the customer-suit exception is inapplicable here given the facts. Likewise, the principles underlying the customer-suit exception do not justify a stay under these circumstances. The movants' request to stay the case as to Amide's claims against the Retail Defendants, pursuant to the exception, is therefore denied. *See In re Dell Inc.*, 600 F.App'x at 730 (observing that there is "no appellate court case, and we are aware of none, that sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier").

## B. Traditional Stay Factors

In addition to maintaining that the customer-suit exception or its principles warrant the requested stay, the movants argue that "traditional factors used in assessing a stay—prejudice, simplification of the issues, and progress of the case— point towards granting one here." (Dkt. #219 at 3). In considering a motion to stay, courts evaluate three factors: (1) "whether a stay will unduly prejudice or present a

clear tactical disadvantage to the nonmoving party;" (2) "whether discovery is complete and whether a trial date has been set;" and (3) "whether a stay will simplify the issues in question and the trial of the case." *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-340-JRG, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020) (internal quotation marks omitted). The Court will address each factor in turn.

### i. Prejudice

Beginning with prejudice, the Court concludes that a stay of proceedings against the Retail Defendants will not unduly prejudice, or present a clear tactical disadvantage to, Amide. Although Amide initially argued that it would be prejudiced for a multitude of reasons, including that the movants' request "would force Amide to litigate multiple damages trials," (Dkt. #225 at 16–17), Amide has since notified the Court that it will no longer oppose the motion to stay once it completes a Rule 30(b)(6) deposition of each Retail Defendant. (Dkt. #255 at 2). By indicating that it is willing to withdraw its opposition,[6] Amide necessarily concedes that a partial stay of the case will not result in undue prejudice in this instance. As a result, because Amide appears to have waived its prior concerns, the Court concludes that this factor is neutral.

### ii. Stage of the Case

For the stage of the case, the movants argue that this factor favors a stay because "[n]o trial has been set, . . . discovery is far from complete, . . . [and] [t]he

---

[6] At the time of this Order, pending before the Court is Amide's Motion to Compel Rule 30(b)(6) Depositions of the Pepsi-Supplied Retailer Defendants. (Dkt. #259). Because Amide has not yet completed the Rule 30(b)(6) depositions of the Retail Defendants, the Court assumes that Amide remains opposed to the movants' stay request.

Court has not yet entered a scheduling order." (Dkt. #219 at 15). In response, Amide asserts that this factor weighs against the movants because the parties have already exchanged numerous discovery requests and document productions, and because "claim construction [is] underway." (Dkt. #225 at 19). Based on this information, it is apparent that the parties are actively engaged in discovery; this is not a case where the proceedings before this Court are at such an early stage that a stay would have no material effect on the proceedings.

As a consequence, this factor does not weigh in favor of the movants' requested stay. *See SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013) (explaining that courts typically find that the factor weighs in favor of a stay when a case is in the early stages of litigation). Even so, the most important events in this litigation have yet to occur. *See id.* (listing the *Markman* hearing, the completion of discovery, the filing of case-dispositive motions, and the setting of a trial date as the "most significant case events in this litigation"). Thus, while the stage of litigation does not weigh in favor of granting a stay, it does not weigh against it either. The Court concludes that this factor is neutral.

### iii. Simplification

Finally, for simplification, the movants contend that the requested partial stay will simplify this case because (1) the Retail Defendants have agreed to be bound "by determinations on the key legal and factual issues as to PepsiCo," and, (2) as a result, Amide will only have to litigate against two defendants—PepsiCo and H-E-B—if the stay is granted. (Dkt. #219 at 13–14). Amide counters that a partial stay of the Retail

Defendants will only make the litigation more complicated, as it could end up resulting in multiple trials and new disputes instead of resolving all issues at once. (Dkt. #225 at 18). Upon consideration, the Court concludes that a partial stay of the Retail Defendants will not simplify this case.

First, the Defendants are similarly situated resellers of the same accused products, *see supra* Part III.A, and the claims against each Defendant are identical, (Dkt. #65 ¶ 110). Thus, a partial stay would merely bifurcate what is likely to be identical litigation that is, as it stands, proceeding in a single action. Moreover, PepsiCo and H-E-B are not better positioned to litigate this case, based on the record before this Court, nor is either party's liability a predicate for recovery from the Retail Defendants. Permitting Amide to proceed against the Retail Defendants, as opposed to staying the case for Amide's claims against the Retail Defendants, is therefore unlikely to materially change the burden on the Court.[7]

Next, although the Retail Defendants maintain that they will stipulate to be bound by the major liability decisions in this case as to PepsiCo, (Dkt. #219) (agreeing to be bound on the following core liability questions: claim construction, alleged infringement, invalidity, and inequitable conduct), the Court is not convinced at this time that the stipulation will simplify the case. Unlike *RPost Holdings, Inc.*, where the parties *jointly* agreed to the stipulation, 2019 WL 1982531, at *1, Amide has not

---

[7] The movants indicate that they may move to sever Amide's claims against each of the Retail Defendants, should this Court deny their requested stay. (Dkt. #228 at 5). Presumably, the movants raise this point to suggest that denying the stay will result in additional motion practice. However, the Court will not consider this potential future motion practice in deciding whether to grant or deny the requested stay in the present motion.

11

similarly joined the movants' stipulation. Absent such a stipulation by Amide, it has not relinquished its right to pursue liability issues as to the Retailer Defendants even if it receives an unfavorable result on such issues as to PepsiCo. Accordingly, the Court cannot assume that the Retail Defendants' one-sided stipulation will streamline even the liability proceedings in this case.

For these reasons, the Court concludes that staying the claims against the Retail Defendants will not meaningfully simplify the proceedings before this Court.[8] If anything, given the current procedural posture, a partial stay may end up complicating matters in the future. This factor therefore weighs against a stay.

*    *    *

Having determined that the first two factors are neutral and that the final factor weighs against a stay, the Court concludes that the balance of the traditional stay factors does not support the movants' request to partially stay the case as to Amide's claims against the Retail Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants PepsiCo, Inc., Amazon.com, Inc., Woot.com LLC, Walmart, Inc., Sam's West, Inc., Albertson's, LLC, The Kroger Company, Target Corporation, Walgreen Company, CVS Pharmacy, Inc., 7-Eleven,

---

[8] For subsequent briefing, to the extent that the Defendants seek to raise similar arguments, the Court recommends that the Defendants file documents jointly and only file separately if a particular Defendant has a unique issue to address or argument to assert. Such an approach will substantially mirror the intended outcome of the Retail Defendants' proposed stipulation to be bound by key legal and factual determinations as to PepsiCo.

Inc., Circle K Stores, Inc., and Costco Wholesale Corporation's Motion to Stay Retailer

Claims, (Dkt. #219), is **DENIED**.

**So ORDERED and SIGNED this 16th day of July, 2026.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE