**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMIDE BEVERAGE COMPANY, LLC<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., WOOT.COM LLC, WALMART, INC., SAM'S WEST, INC., ALBERTSON'S, LLC, THE KROGER COMPANY, TARGET CORPORATION, PEPSICO, INC., WALGREEN CO., CVS PHARMACY, INC., 7-ELEVEN, INC., CIRCLE K STORES INC., COSTCO WHOLESALE CORPORATION, AND H-E-B, LP,<br><br>Defendants. | Civil Action No. 4:24-cv-01022-SDJ<br><br>JURY TRIAL DEMANDED |

**MOTION TO COMPEL THERMOLIFE INTERNATIONAL, LLC TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA FROM PEPSICO, INC.**

## I. INTRODUCTION

There is no dispute that ThermoLife, LLC—the prior exclusive licensee (and later, owner) of the patent-in-suit—possesses and is willing to produce documents that its counsel, who also represents Plaintiff Amide Beverage Company, LLC, told the Court last year would be produced. Yet ThermoLife has not done so in response to a valid subpoena from PepsiCo, relying on the protective order of another court, which has said it defers to this Court on whether these documents may be produced. PepsiCo requests this Court order compliance with PepsiCo's subpoena and the production of these documents under the protective order in place in this case.

The documents that Amide represented in open court over a year ago would be produced are from earlier Florida bankruptcy proceedings of Vital Pharmaceuticals, Inc., the former manufacturer of the accused products. In Vital's bankruptcy proceedings, ThermoLife filed an adversary complaint for patent infringement against Vital. ThermoLife alleged that Vital infringed the same patent at issue in this case by making and selling the same accused product in this case (Bang energy drink).

Amide's counsel, who also represents ThermoLife, invited PepsiCo to subpoena ThermoLife for those documents, explaining that it was ThermoLife, not Amide, who possessed them. PepsiCo did so. ThermoLife has not produced these documents, of which there are only six (the "Sealed Documents"), and has refused to join this motion to compel their production.

ThermoLife has not produced these six Sealed Documents because they are subject to restrictions imposed by the Florida Bankruptcy Court's protective order. PepsiCo and ThermoLife jointly asked the Bankruptcy Court to lift those restrictions to allow ThermoLife to produce these documents under this Court's protective order in response to PepsiCo's subpoena. The Bankruptcy Court denied that motion without prejudice to the parties seeking relief from this Court—the Bankruptcy Court reasoned that this Court was better positioned to assess whether the protective

order in this case adequately safeguards third-party confidentiality interests that may (or may not) exist in these documents. Thus, the Bankruptcy Court deferred to this Court and its existing protective order—if this Court decides ThermoLife may produce the documents, ThermoLife may do so.

There is no dispute that these documents are relevant to this case and responsive to PepsiCo's subpoena. And aside from the Florida Bankruptcy Court's protective order, ThermoLife has offered no reason for refusing to produce—in fact, its counsel affirmatively represented to this Court that the documents would be produced, and then invited PepsiCo to issue a subpoena for their production. Accordingly, PepsiCo asks that this Court enter an order enforcing compliance with its subpoena compelling ThermoLife to produce these documents as "Highly Confidential – Attorneys' Eyes Only" under the Court's existing protective order (Dkt. No. 191).

## II. BACKGROUND

### A. ThermoLife filed an adversary complaint in Bankruptcy Court against Vital, the manufacturer of the accused products in this case, asserting infringement of the same claims of the same patent at issue in this case.

PepsiCo's subpoena seeks documents from a prior lawsuit that involved the same patent and the same accused product because those documents may bear on issues in this case.

The original maker of the accused Bang energy drink, Vital Pharmaceuticals, declared bankruptcy and filed a Chapter 11 petition on October 10, 2022. Dkt. No. 65 ("Am. Compl.") ¶¶ 59–60; *In re Vital Pharms., Inc.*, No. 22-17842-PDR (Bankr. S.D. Fla. Oct. 10, 2022) ("*In re Vital*"), Dkt. No. 1.

ThermoLife thereafter sued Vital for patent infringement. Am. Compl. ¶ 86. ThermoLife filed its patent suit as an adversary complaint against Vital in the bankruptcy proceeding. *ThermoLife Int'l, LLC v. Vital Pharms., Inc.*, No. 23-01134-PDR (Bankr. S.D. Fla. July 5, 2023)

(the "Adversary Case"), Dkt. No. 1 (Plassio Decl. Ex. 1). ThermoLife alleged that Vital infringed claims 1, 5, and 6 of U.S. Patent No. 8,350,077 by selling Bang *after* the date of Vital's bankruptcy petition. *Id*. ¶¶ 3, 40–64, Prayer for Relief § B.

Amide later acquired the '077 Patent from ThermoLife. Am. Compl. ¶ 1. Amide asserts that defendants here, including PepsiCo, infringed claims 1 and 5 of the '077 Patent by selling Bang *prior to* the date of Vital's bankruptcy petition. *Id*. ¶¶ 109–149, Prayer for Relief § C.

In the bankruptcy proceeding, ThermoLife and Vital filed a proposed protective order to protect sensitive and non-public information. Adversary Case, Dkt. No. 27 (the "Proposed Protective Order," Plassio Decl. Ex. 2). The Proposed Protective Order states:

> Each party, outside counsel may retain one complete and unredacted set of pleadings and papers filed with the Court and served on the other party *solely for reference in the event of, and only in the event of, further proceedings or litigation between the parties, or a dispute over the use or dissemination of CONFIDENTIAL and CONFIDENTIAL – ATTORNEYS' EYES ONLY materials subject to the terms of this Order and Agreement*. Such retained copy of pleadings and papers shall be maintained in a sealed file accessible only by outside counsel bound by this Order and Agreement. This Order and Agreement shall survive the final termination of this litigation with respect to any such retained CONFIDENTIAL and CONFIDENTIAL – ATTORNEYS' EYES ONLY materials.

*Id*. at ¶ 22 (emphasis added).[1] The Bankruptcy Court never entered the proposed protective order.

**B. Vital sought to estimate ThermoLife's patent claim, and the parties filed sealed materials relating to that request.**

The parties in the bankruptcy proceedings took positions on the value of the patent-in-suit. Vital filed a motion to estimate—to place value on—ThermoLife's patent infringement claim against Vital. *In re Vital*, Dkt. No. 1929; *see* 11 U.S.C. § 502(c) ("There shall be estimated for purpose of allowance under this section (1) any contingent or unliquidated claim, the fixing or

[1] The Proposed Protective Order contains two paragraphs numbered "22"; at issue here is the first of these paragraphs. *See* Plassio Decl. Ex. 2 (Proposed Protective Order) at 14–15.

liquidation of which, as the case may be, would unduly delay the administration of the case; or (2) any right to payment arising from a right to an equitable remedy for breach of performance."). ThermoLife separately submitted an application in the bankruptcy for allowance and payment of its alleged damages for patent infringement as an administrative expense claim. *In re Vital*, Dkt. No. 1964.

ThermoLife and Vital filed opposing, sealed briefs and evidence under the Proposed Protective Order. Those materials included the following Sealed Documents, which are:

- *In re Vital*, Dkt. Nos. 1934, 1935, 1965—ThermoLife's Opening Brief Regarding Claim Estimation and supporting declarations.
- *In re Vital*, Dkt. No. 2017, 2018, 2019—Vital's Responsive Estimation Brief and supporting declarations.

ThermoLife, through its counsel, possesses the Sealed Documents (totaling six).[2] Plassio Decl. ¶ 11. These are the documents PepsiCo seeks to compel through this motion.

### C. Vital and ThermoLife resolved the Adversary Case, with the Bankruptcy Court ordering that the Sealed Documents are subject to the Proposed Protective Order.

Vital and ThermoLife resolved the claims in the Adversary Case, but the key documents remained under seal. By way of an agreed order, the parties settled for a payment of up to $1,250,000 to ThermoLife as an administrative expense claim. *In re Vital*, Dkt. No. 2142 (the "Administrative Expense Claim Order," Plassio Decl. Ex. 3).

The Court's order resolving Vital and ThermoLife's patent dispute recited language recounting a self-serving and contrived 8–10% alleged reasonable royalty that was apparently agreed between those parties. The order states:

---

[2] ThermoLife has represented that (1) these are the only documents responsive to PepsiCo's subpoena in its possession that it contends are subject to the Proposed Protective Order, and (2) ThermoLife is not withholding any other responsive documents in its possession on the basis of the Proposed Protective Order. Plassio Decl. ¶ 11.

> This Order resolves patent litigation asserted as an administrative expense claim against a debtor in bankruptcy and involves the resolution of disputed claims. As such, the payment(s) set forth herein do not reflect a reasonable royalty, but instead reflect a lesser amount required by circumstances of the ongoing bankruptcy proceeding. *The Debtors and ThermoLife hereto agree that a reasonable royalty for U.S. Patent No. 8,350,077 would be 8 to 10 percent of sales of consumer products that include infringing compounds or were made pursuant to an infringing manufacturing process*.

*Id*. ¶ 10 (emphasis added).

Amide has signaled in the present case that it will attempt to rely on this "8 to 10 percent" alleged reasonable royalty statement as part of its damages case. For example, in its operative complaint here, Amide quotes this portion of the Administrative Expense Claim Order. Am. Compl. ¶ 103. Amide also cites the "extensive briefing, exhibits, and testimonial proffers from four separate expert witnesses in support of their claims and defenses" that contributed to a "mutually agreeable resolution" of the Adversary Case. *Id*. ¶ 101. But the statement regarding the "8 to 10 percent" alleged reasonable royalty appears to be a self-serving one, included in the Administrative Expense Claim Order at ThermoLife's request for purposes of weaponizing a royalty rate against future patent defendants. *See* Plassio Decl. Ex. 4 at 15:22–23:25 (bankruptcy hearing discussing objections by a third party to the inclusion of the "8 to 10 percent" alleged reasonable royalty in the Administrative Expense Claim Order). The Bankruptcy Court ultimately included the "8 to 10 percent" statement over objections, noting in part that future defendants would be able to cross examine or test the bases for it. *Id*. at 31:8–32:16, 40:7–41:13. Testing the basis for the "8 to 10 percent" statement is exactly what PepsiCo needs to do in this case, and hence one of the reasons PepsiCo seeks the Sealed Documents.

The Bankruptcy Court said in the Administrative Expense Claim Order that the Sealed Documents, among others, "shall remain under seal and subject to the" Proposed Protective Order.

Plassio Decl. Ex. 3 (Administrative Expense Claim Order) at ¶ 11. ThermoLife has taken the position *in this case* that the documents cannot be produced in response to PepsiCo's subpoena because of these restrictions from the Bankruptcy Court.

**D. PepsiCo subpoenaed ThermoLife in this action.**

Counsel for Amide, who also is counsel for ThermoLife, told the parties and the Court that it would be producing materials from the bankruptcy. Specifically, at a July 9, 2025 hearing on an unrelated motion in this case, counsel for Amide and ThermoLife (who also represented ThermoLife in the Adversary Case) stated that Amide has "a really small handful of technical documents from the bankruptcy trustee that still existed within Vital. Some of their product manufacturing recipes and so forth. That's a thin set of stuff. And we will absolutely produce that so we all have the same level of information." Plassio Decl. Ex. 5 at 41:10–18. PepsiCo asked that Amide produce those documents. Plassio Decl. Ex. 6 (July 14, 2025 email from Hardy to Devlin, et al.). Amide's counsel responded that he misspoke at the hearing regarding the entity possessing those documents: it was ThermoLife, not Amide, who possessed them, but his firm could accept a subpoena for ThermoLife and "work through those issues . . . promptly." *Id*. (July 22, 2025 email from Devlin to Hardy, et al.). ThermoLife has explained that these materials are among the Sealed Documents. Plassio Decl. ¶ 11.

PepsiCo then subpoenaed ThermoLife. Plassio Decl. Ex. 7. PepsiCo sought, among other things, expert reports, declarations, documents produced by the parties, and other documents filed in and supporting the Adversary Proceeding and the Administrative Expense Order. *Id*. at Request Nos. 10–12. PepsiCo also sought technical documents relating to the '077 Patent that Amide and ThermoLife's counsel possess from the Adversary Case. *Id*. at Request No. 36.

**E. ThermoLife and PepsiCo jointly requested clarity from the Bankruptcy Court regarding the applicability of the Proposed Protective Order to documents responsive to the subpoena, including the Sealed Documents.**

ThermoLife refused to produce the Sealed Documents, even though it claims it was and is willing to do so. ThermoLife took the position that, because these documents were designated under the Proposed Protective Order in the Bankruptcy Court and filed under seal, it could not produce them in response to the subpoena—even though PepsiCo was and is willing to accept them under the highest level of protection of this Court's protective order ("Highly Confidential – Attorneys' Eyes Only"). Plassio Decl. ¶ 12 & Ex. 8 (*In re Vital*, Dkt. No. 3000 (the "Proposed Protective Order Relief Motion")) at ¶¶ 10, 16. ThermoLife contended relief from the Bankruptcy Court was necessary in light of the provisions of the Proposed Protective Order, made applicable to the Sealed Documents by the Administrative Expense Claim Order. *Id.*[3]

PepsiCo and ThermoLife therefore jointly sought relief from the Bankruptcy Court. They submitted an agreed motion seeking relief that would allow ThermoLife to produce the Sealed Documents to PepsiCo in this litigation, subject to this Court's protective order. *See generally id.* Vital's bankruptcy Trustee, who was served with all papers and appeared through counsel at all hearings addressing this matter in the Bankruptcy Court, did not oppose the relief sought in the Proposed Protective Order Relief Motion. *Id.*

**F. The Bankruptcy Court denied the Proposed Protective Order Relief Motion without prejudice, deferring to this Court regarding whether and under what conditions the Sealed Documents should be produced.**

After hearings on the Proposed Protective Order Relief Motion on April 2 and April 23, 2026, *In re Vital*, Dkt. Nos. 3027, 3057, the Bankruptcy Court deferred to this Court for a ruling

[3] PepsiCo separately subpoenaed the Vital bankruptcy Trustee (formed after Vital's liquidation in bankruptcy) for the same documents, among others, but the Trust confirmed that it does not have them in its possession. Plassio Decl. Ex. 8 (Proposed Protective Order Relief Motion) at ¶ 11.

on whether ThermoLife could produce the Sealed Documents, and, if so, under what conditions. Plassio Decl. Ex. 9 (*In re Vital*, Dkt. No. 3049). The court first ruled that the confidentiality restrictions of the Proposed Protective Order, made operative by the Administrative Expense Claim Order, "remain in full force and effect." *Id.* ¶ 2. The court clarified, though, that "[n]othing in this order prevents the parties from seeking relief from a court of competent jurisdiction, including the United States District Court for the Eastern District of Texas in *Amide Beverage Company, LLC v. Amazon.com, Inc. et al.*, Case No. 4:24-CV-01022-SDJ." *Id.* ¶ 3. The court added:

> Any such court may, upon appropriate motion and a sufficient evidentiary record, determine whether and under what conditions the materials may be produced in response to discovery requests, including: (a) whether notice should be provided to any potentially affected third parties, including any purchaser of Vital's assets, or other entities that may claim a confidentiality interest, (b) the scope of any such notice and opportunity to be heard, (c) the applicability and sufficiency of any protective order governing the use and disclosure of the materials, including attorneys' eyes only restrictions, and (d) any other procedures necessary to protect legitimate confidentiality interests while permitting appropriate discovery.

*Id.* ¶ 4.

The Bankruptcy Court explained that its rationale for denying the Proposed Protective Order Relief Motion stemmed from a concern over "potentially affect[ing] confidentiality interests reflected in sealed filings, including interests of persons or entities not before the Court." *Id.* at 9 (51:1–3). The Bankruptcy Court had previously ordered ThermoLife and the bankruptcy Trustee "to undertake a further review of the materials subject to the administrative expense claim order and the proposed protective order and to determine whether any third party, other than ThermoLife or the debtors or their successor, has a confidentiality interest in the sealed materials." *Id.* at 9–10 (51:19–52:7). But both ThermoLife and the bankruptcy Trustee said they were unable to represent

that no such third-party confidentiality interest existed in the materials. *Id*. at 10 (52:8–52:17).[4] As detailed below, this Court's existing protective order (Dkt. No. 191) contains robust provisions that protect third-party confidential information in the Sealed Documents, if there is any.

Nevertheless, the Bankruptcy Court deferred to this Court as better "positioned to supervise discovery, address confidentiality concerns, and determine what procedures, including notice, are appropriate" should the Sealed Documents be ordered produced. Plassio Decl. Ex. 10 at 54:17–19. Accordingly, the Bankruptcy Court ordered that any court of competent jurisdiction, including this Court, "may, upon appropriate motion and a sufficient evidentiary record, determine whether and under what conditions the materials may be produced in response to discovery requests," including whether notice should be given to third parties, the applicability of this Court's existing protective order, and any other procedures necessary to protect confidentiality interests. Ex. 10 at 55:6–19; *see also id*. at 33:24–34:7 ("[W]hat I'm not going to do is make a final decision as to who gets these documents and under what conditions. . . . But I am willing to, you know,

[4] The Bankruptcy Court noted the possibility that the Sealed Documents might contain third-party confidential information, including that of Monster Energy Company ("Monster"), whose subsidiary, Blast Asset Acquisition LLC, purchased the assets of Vital out of the bankruptcy proceeding. Plassio Decl. Ex. 10 (53:5–16). Counsel for Monster attended the Bankruptcy Court hearing. *Id*. at 33:6–18. But the only parties with access to the Sealed Documents under the Proposed Protective Order—ThermoLife and Vital's bankruptcy trustee—cannot confirm whether the Sealed Documents contained any confidential information of any particular third party, let alone that of Monster specifically. *Id*. at 46:2–11 (ThermoLife's counsel explaining "I'm still wondering how we can ensure that all parties with an interest in the confidential information are noticed. I think factually what I'm hearing from the liquidating trustee's counsel is that that's not something that can be determined with certainty"); *id*. at 13:17–14:24 (counsel for Vital's bankruptcy trustee explaining that "it [is] impossible to confirm with 100 percent certainty . . . whether any third parties have an interest in the confidential information contained in those sealed filings"). Notably, the sale of Vital's assets out of bankruptcy closed on July 31, 2023, *In re Vital*, Dkt. No. 1750, but all of the Sealed Documents were created and filed with the Bankruptcy Court months earlier in October 2022, *In re Vital*, Dkt. Nos. 1934, 1935, 1965, 2017–2019. To resolve this issue of potential third party interests, counsel for PepsiCo has given notice of this filing to counsel for Monster, the only additional third party who is identified as possibly having an interest. Plassio Decl. ¶ 16.

acknowledge that the Eastern District of Texas can have at it, because I don't want to also interfere -- I'm not going to decide, but I'm also not going to interfere as long as everyone's protected pursuant to the Eastern District of Texas perspective."); *id*. at 35:15–17 ("If the Eastern District of Texas decides that attorneys' eyes only is fine, then I'm certainly not going to stand in the way of that."); *id*. at 39:11–21 (the Bankruptcy Court confirming its intention, as articulated by counsel for PepsiCo, that "this is being given to Judge Jordan to decide and [the Bankruptcy Court is] signed off on it, provided that he thinks it's okay").

In other words, if this Court orders the Sealed Documents be produced, there is no remaining barrier to production of the subpoenaed documents.

PepsiCo asked ThermoLife to join a motion to compel to this Court to allow the Sealed Documents to be produced under the protective order in this action. Plassio Decl. ¶ 15.

## III. LEGAL STANDARD

Litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A court may compel production of requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). A party serving a subpoena may move the court for the district where compliance is required for an order compelling production of documents subject to the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i).

## IV. ARGUMENT

There are only six Sealed Documents; their production would not be burdensome, and ThermoLife has not contended otherwise. There is no dispute that the Sealed Documents are relevant and responsive. Among other things, they relate to Amide's calculation of damages for patent infringement in that earlier case. For example, Amide's Amended Complaint quotes the Administrative Expense Claim Order's recounting of an agreement between Vital and ThermoLife "'that a reasonable royalty for U.S. Patent No. 8,350,077 would be 8 to 10 percent of sales of

consumer products that include infringing compounds or were made pursuant to an infringing manufacturing process.'" Am. Compl. ¶ 103 (quoting Plassio Decl. Ex. 3 (Administrative Expense Claim Order) at ¶ 10). These documents also contain technical information relating to the accused products in both this case and in the Adversary Case. Plassio Decl. Ex. 5 at 41:10–18.

In light of the deference given by the Bankruptcy Court to this Court, PepsiCo requests that this Court issue an order compelling ThermoLife to produce the Sealed Documents, including as "Highly Confidential – Attorneys' Eyes Only" under this Court's Protective Order. Dkt. No. 191. It is common for documents containing third-party confidential information to be exchanged in litigation, especially complex patent disputes like this one where the technology and ownership of intellectual property have changed hands over time; this Court's protective order is well-positioned to protect any third-party confidential information in the Sealed Documents just as it would any other third-party confidential information. This robust level of "AEO" protection will ensure that any third-party confidential information in the Sealed Documents will be protected. Specifically, this "AEO" designation will limit access to only outside counsel of record and their employees, the Court and its personnel, expert witnesses, court reporters and videographers (and their staff), and certain limited deponents who have already had access to these materials or who are eligible to have access to these materials. *Id.* ¶¶ 9(a)(i)–(vi), (c). Further, the Protective Order dictates that it "shall be used solely for the prosecution of this litigation." *Id.* ¶ 9(b).

These protections will function the same as those afforded to the Sealed Documents by the Bankruptcy Court's Proposed Protective Order. That order, like this Court's protective order, limits the use of designated materials to the purpose of conducting the litigation at hand. *Id.*; Plassio Decl. Ex. 2 (Proposed Protective Order) at ¶ 4. And the categories of individuals afforded access to these materials is substantially the same. The only individuals allowed access to this

information under this Court's protective order but not the Proposed Protective Order are deponents who have previously seen the designated materials. Dkt. No. 191 ¶ 9(a)(vi), (c); Plassio Decl. Ex. 2 (Proposed Protective Order) at ¶ 4. But there would almost certainly be no such deponents in this case. ThermoLife created the Sealed Documents as part of its estimation briefing in the bankruptcy proceedings, such that no potential deponents in this action (all from non-parties to the Adversary Case) would have previously accessed these documents. Thus, in short, this Court's protective order would provide at least as much protection to the Sealed Documents as the Proposed Protective Order would.

## V. CONCLUSION

Based on their relevance and importance to this action, PepsiCo requests an order from this Court compelling ThermoLife to produce the Sealed Documents as "Highly Confidential – Attorneys' Eyes Only," which would alleviate any third-party confidentiality issues, as well as any concerns by ThermoLife that production would run afoul of the Proposed Protective Order.

Dated: September 8, 2026

Respectfully submitted,

O'MELVENY & MYERS LLP
By: <u>*/s/ Timothy S. Durst*</u>
Timothy S. Durst (TX #00786924)
tdurst@omm.com
John Kappos (TX #24130097)
jkappos@omm.com
Patrick V. Plassio (TX #24102362)
pplassio@omm.com
2801 North Harwood Street
Suite 1600
Dallas, TX 75201-2692
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

*Attorneys for Defendant PepsiCo, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026 I have electronically filed this Motion with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

By: */s/ Timothy S. Durst*
Timothy S. Durst

**CERTIFICATE OF CONFERENCE**

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). A personal conference was conducted by videoconference on August 14, 2026 between Timothy S. Durst and Patrick V. Plassio for PepsiCo, Inc. and Timothy Devlin and Joseph J. Gribbin for ThermoLife International, LLC. No agreement could be reached, as PepsiCo and ThermoLife are at an impasse on the requirements for an order from this Court compelling ThermoLife to produce the documents subject to this motion. Counsel for PepsiCo, Inc. further conferred with counsel for all other parties in this action, who confirmed that they do not oppose the relief sought herein.

By: */s/ Timothy S. Durst*
Timothy S. Durst